Cindy A. **BAKER**, by and through her father, Joseph Baker, et al., Plaintiffs-Appellants,

v.

**ELCONA HOMES CORPORATION** and Joseph L. Slabach, Defendants-Appellees.

No. 76–2474.

United States Court of Appeals, Sixth Circuit.

Argued April 19, 1978.

Decided Dec. 8, 1978.

John J. McCarthy, William A. Davis, Harlan M. Gordon, Komito, Nurenberg, Plevin, Jocobson, Heller & McCarthy, Cleveland, Ohio, for Baker.

Thomas Murray, Jr., Murray & Murray Co., Sandusky, Ohio, for Banks et al.

John W. Hackett, Jr., Thomas G. Pletz, Schumaker, Loop & Kendrick, Toledo, Ohio, for defendants-appellees.

Before ENGEL and KEITH, Circuit Judges and JOHNSTONE, District Judge.*

ENGEL, Circuit Judge.

Early in the evening of June 7, 1973, a 1968 Plymouth Valiant automobile travelling southbound on State Route 4 and a Ford semi-tractor truck travelling westbound on U.S. Route 20 collided at the intersection of the two routes, seriously injuring one and killing the other five occupants of the Valiant. The driver of the truck did not sustain serious injury. U.S. Route 20 at that intersection was a four-lane divided highway running generally east and west; State Route 4 was a two-lane highway running generally north and south. The intersection was controlled by a traffic light.[1]

---

* Hon. Edward H. Johnstone, Judge, United States District Court for the Western District of Kentucky, sitting by designation.

1. The traffic light at the intersection was controlled by "sensors" or trip signals. Since U.S. Route 20 was the more heavily travelled highway, the signal system was designed so that if there was no traffic approaching the intersection on State Route 4, the signal controlling U.S. Route 20 would remain a constant green until a vehicle on State Route 4 crossed the sensors. Thus the signal's "rest" position was normally green for Route 20 and red for Route 4. According to the testimony, when a vehicle approaching the intersection southbound on State Route 4 crossed its sensor, and if no vehicle had crossed the sensor on U.S. Route 20 in the last six seconds, the traffic signal for U.S. Route 20 would immediately change from a green to an amber light and would remain amber for a period of four seconds while the signal for State Route 4 would remain red. Thereafter, the signal for U.S. Route 20 would change from amber to red so that both highways received red signals for a period of one second. After the expiration of one second, the signal controlling State Route 4 would change from red to green, while the signal for U.S. Route 20 remained red. Thus when the signal system is in the "rest" position, a minimum of four seconds would elapse between the moment that a vehicle on State Route 4 crossed its sensor until the signal controlling U.S. Route 20 changed to red. However, if a vehicle had crossed the sensor on U.S. Route 20 within six seconds prior to the time that the vehicle on State Route 4 passed it sensor, then a period of

The occupants of the automobile were returning home from a high school outing when their car was struck by the truck. Joseph Slabach, the driver of the truck, was returning home after making a delivery for his employer, Elcona Homes Corporation. It is not disputed that Slabach was operating the truck in the course of his employment for Elcona Homes Corporation.

A complaint invoking the diversity jurisdiction of the district court and filed by the administrators of the estates of the four deceased passengers of the Valiant was consolidated for trial with a similar complaint brought on behalf of the seriously injured passenger, Cindy Baker. Named as defendants were Slabach and Elcona Homes Corporation.

■ The plaintiffs' causes of action were based on the alleged negligence of the defendant Slabach. The primary factual issue in the lawsuit was which vehicle had the right-of-way at the time it entered the intersection. Since Slabach testified that he could not see the light because he was blinded by the sun, and since Cindy Baker had no recollection of the accident, there was no direct eyewitness testimony concerning this fact and the jury's resolution of the issue had to depend upon circumstantial evidence and such inferences as could be made from it. The burden of proof, of course, rested upon the plaintiffs. A jury trial resulted in a judgment in favor of the defendants; the plaintiffs appeal. We affirm.

I.

The principal issue upon appeal concerns the admission into evidence of the police accident report prepared by Sgt. John N. Hendrickson, a twenty-eight year veteran of the Ohio State Highway Patrol. Hendrickson, as assistant post commander, was on duty at the Norwalk Post when the accident occurred and, upon receiving the accident report, sped directly to the scene, arriving approximately six minutes after the collision.

Sgt. Hendrickson was called as a witness by the defense, although he had been subpoenaed but not called by the plaintiffs. He testified at length about the physical circumstances at the accident scene, including the measurements taken and careful descriptions of the locations of the vehicles and physical markings, refreshing his recollection from time to time from the police accident report. He further testified to having visited the defendant Slabach at the hospital and to having taken a statement from him in which Slabach, while admitting that because of the sunlight he could not see the color of the traffic light controlling the intersection, described the location and speed of the Valiant when he first observed it emerging from behind a house located on the northeast corner of the intersection. Sgt. Hendrickson also identified a diagram of the accident scene on which were placed, on transparent overlays, the locations of the two vehicles at the point of impact and as they came to rest, calculated by the sergeant from his investigative materials and from his use of vector analysis.[2]

While Sgt. Hendrickson was examined and cross-examined at length concerning the factual data which he incorporated in the accident report and the vector analysis he employed, he was not questioned concerning any opinion he might have as to who had the right-of-way, although he had

time, to a maximum of six seconds, would elapse between the crossing of the sensor on State Route 4 at the instant that the signal for U.S. Route 20 changed to amber.

2. Vector analysis, according to Sgt. Hendrickson, is a technique of reconstructing an accident through the use of what is known as a momentum formula: "It is an inverse ratio—in other words, the rate [sic weight] times the speed of one vehicle divided by the weight and speed of the other vehicle gives an inverse proportion of the displacement of the second vehicle divided by the weight of the displacement of the first vehicle. This transposed out, I got it worked out, and I come up with the speed of approximately 43 miles. And I got 43.3 because that is what the computer tells me . . . for the automobile," assuming that the truck had been proceeding at the speed of 55 miles per hour estimated by its driver. Joint Appendix 437–40.

qualified as an expert in accident reconstruction and although the plaintiffs had, in their case-in-chief, employed similarly an accident reconstruction expert who opined that the light was green for the Valiant at the time it entered the intersection.

◼ After Sgt. Hendrickson had left the stand, however, the defense introduced the police accident report into evidence, over the hearsay objection of plaintiffs. Plaintiffs particularly objected to Sgt. Hendrickson's record of the statement of defendant Slabach [3] and to Sgt. Hendrickson's notations concerning the fault for the accident. The report included the observation that

"apparently unit # 2 [the Valiant] entered the intersection against a red light." Likewise, on the same page of the accident report under "contributing circumstances," Sgt. Hendrickson had checked the box provided on the form for failure of vehicle # 2 [the Valiant] to yield the right-of-way and had also checked the boxes next to "driver preoccupation" for drivers of both the truck and the Valiant.

◼ .In admitting the accident report and the addenda to it, the district judge appears to have concluded that the report was admissible as a recorded recollection under Fed.R.Evid. 803(5).[4] We conclude, however,

---

**3.** Slabach's statement was as follows:

I was traveling westbound on U.S. 20 coming from Loudonville and headed for exit 6 on turnpike. I was traveling at approximately 50–55 miles per hour. As I was proceeding westbound and coming near the intersection, I saw a car pull out from the north on SR–4, I then saw the traffic light. I could not say what color the light was because the sun was blinding my vision.

Q. Where did you first see the car?
A. I saw it when it came out from behind the house at the corner.
Q. Did it look to have been stopped?
A. No, sir.
Q. Did you see the car hits [sic] its brakes?
A. No, it all happened so quick.
Q. Did you have the green light as you were approaching the intersection?
A. Sir, I don't know, sun was in my eyes.
Q. Was traffic moving in opposite direction on U.S. 20 coming from west?
A. Yes sir, it was moving. I saw no traffic stopped.
Q. How far away were you from the intersection when you first saw the car coming from behind the house?
A. I really don't know because it all happened so fast.
Q. Could you see who was driving car?
A. No, sir, all I remember was the car, can't remember anything else.
Q. How fast would you estimate the car's speed traveling southbound?
A. It looked just like a flash, about 50–60 m.p.h.
Q. Could you estimate how far from the intersection you were when you first saw car?
A. I really don't know, it all happened so fast I really couldn't tell you.
Q. Did you see any cross traffic on SR–4 prior to the car you struck?
A. No.
Q. How often do you travel on U.S. 20?

A. This was the second trip. Normally I run on the turnpike.
Joint Appendix 598–99.

**4.** Thus the court observed:

Because of the complexity of that document, and even though the officer testified that generally he has a recollection of the vehicles, specifically he could not duplicate every word in there, and therefore was recorded, and it is better evidence than this general recollection.
Joint Appendix 508.
Fed.R.Evid. 803(5) provides:

Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.
Reliance upon Rule 803(5) is, in our opinion, insufficient here to support admissibility against the claim that it was hearsay. The parties dispute whether Sgt. Hendrickson in fact had "insufficient recollection" within the meaning of the rule and a review of the record is convincing that Sgt. Hendrickson was able to remember basically what was in the report, although he refreshed himself from time to time. There was no testimony that he needed the report to testify fully and accurately as to its contents. More important, however, is the provision of Rule 803(5) that a memorandum or record may not itself be received as an exhibit unless offered by an adverse party. Since the record was introduced by the defendants who themselves called Sgt. Hendrickson, it would not have been admissible under this subsection. *United States v. Judon,* 567 F.2d 1289 (5th Cir. 1978). *See also United States v. Williams,* 571 F.2d 344 (6th Cir. 1978).

that the report was more properly admissible as a public record under Fed.R.Evid. 803(8):

> **Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The relatively little case law which has developed since the adoption of Rule 803(8) supports the admissibility of the police report. A police report is, in our judgment, a "public record and report" within the meaning of the first part of Rule 803(8). The direct observations and recorded data of Sgt. Hendrickson in the course of his investigation which were placed upon the report clearly are "matters observed pursuant to duty imposed by law as to which matters there was a duty to report," under Rule 803(8)(B),[5] and are thereby not inadmissible under the hearsay rule. The principal concerns, however, are whether Slabach's statement as recorded in the police report and whether the findings of Sgt. Hendrickson as to the color of the light at the time of the accident and his markings on the boxes relative to the contributing circumstances of the accident were properly allowed to be put before the jury as substantive evidence.

We address first the question of whether the finding that the Valiant ran the red light is a "factual finding" within the meaning of Rule 803(8)(C). We conclude that it is.

In enacting the Federal Rules of Evidence, the House Judiciary Committee adopted a narrow interpretation of "factual findings."

> The Committee intends that "factual findings" be strictly construed and that evaluations and opinions in the report shall not be admissible under this Rule.

Report of the Committee on the Judiciary, H.R.Rep.No.93–650, 93d Cong., 1st Sess. 14 (1973), U.S.Code Cong. & Admin.News 1974, pp. 7051, 7088. The Senate, however, disagreed with this narrow interpretation:

> The House Judiciary Committee report contained a statement of intent that "the phrase 'factual findings' in subdivision (c) be strictly construed and that evaluations or opinions contained in public reports shall not be admissible under this rule." The committee takes strong exception to this limiting understanding of the application of the rule. We do not think it reflects an understanding of the intended operation of the rule as explained in the Advisory Committee notes to this subsection. The Advisory Committee notes on subsection (c) of this subdivision point out that various kinds of evaluative reports are now admissible under Federal statutes. 7 U.S.C. § 78, findings of Secretary of Agriculture prima facie evidence of true grade of grain; 42 U.S.C. § 269(b), bill of health by appropriate official prima facie evidence of vessel's sanitary history and condition and compliance with regulations. These statutory exceptions to the hearsay rule are preserved. Rule 802. The willingness of Congress to recognize these and other such evaluative reports provides a helpful guide in determining the kind of reports which are intended to be admissible under this rule. We think the restrictive interpretation of the House overlooks the fact that while the Advisory Committee assumes admissibility in the first instance of evaluative reports, they are not admissible if, as the rule states, "the sources of information or

---

5. The investigation was made pursuant to authority granted by law. Ohio Rev.Code Ann. § 5503.02 (Baldwin 1974).

other circumstances indicate lack of trustworthiness."

Report of the Committee on the Judiciary, S.Rep.No.93–1277, 93d Cong., 2d Sess. 18 (1974), U.S.Code Cong. & Admin.News 1974, p. 7064. While the Conference Committee finally adopted the House's version of this Rule, both the House and Senate versions employed the term "factual findings," and the differing views as to the meaning of that term were not resolved.[6] The Advisory Committee Notes, however, accept "evaluative reports" as being within the meaning of factual findings under Rule 803(8)(C).

Generally the courts have been liberal in determining admissibility under Rule 803(8). Thus in *Melville v. American Home Assurance Company*, 443 F.Supp. 1064 (E.D. Pa.1977), the court allowed into evidence two FAA Air Worthiness directives, which impugned the mechanical safety of the model of plane which had been involved in that lawsuit. In admitting the reports, the district court took note of the conflict between the House and Senate interpretations of "factual findings," *id.* at 1113–14, and agreed with the Senate Judiciary Committee that the Advisory Committee's methodology provided adequate guidance and safeguards for admissibility of such reports under Rule 803(8)(C).

In *United States v. School District of Ferndale, Michigan*, 577 F.2d 1339 (6th Cir. 1978), Judge Celebrezze reversed a determination of the district court that the findings of an HEW hearing examiner were inadmissible hearsay, untrustworthy and did not fall within the exception of Rule 803(8)(C) since they were not factual findings. There our court held that the district judge should have received under Rule 803(8) as evidence the findings of an HEW hearing examiner that a school had been established and maintained as a black school for segregatory purposes and that the district court had erred in excluding the findings as hearsay and as untrustworthy. The court stated:

The United States asserts that the findings, while hearsay, are admissible under Federal Rule of Evidence 803(8)(C) as a public record or report. The district court ruled that the findings did not fall within the scope of Rule 803(8)(C) since they were not "factual findings resulting from an investigation made pursuant to authority granted by law." In particular, the court felt the HEW proceedings did not amount to an "investigation" but rather constituted a "quasi-judicial hearing."

We agree with the United States that the HEW findings come within the scope of Rule 803(8)(C) as they are "factual findings resulting from an investigation made pursuant to authority granted by law." The investigation vs. adjudication distinction fashioned by the district court finds no support in the rule or the cases interpreting it. The Supreme Court has construed Rule 803(8)(C) to apply in an analogous situation. *Chandler v. Roudebush*, 425 U.S. 840, 863 n.39, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). *See also Hackley v. Roudebush*, 171 U.S.App.D.C. 376, 520 F.2d 108, 150–51 & 156–57 n.195 (1975). Clearly, the HEW proceedings were an "investigation" into the state of affairs in the Ferndale schools within the plain meaning of that word. That the proceedings could also be labelled a "quasi-judicial hearing" is of no consequence in this regard.

577 F.2d at 1354 (footnote omitted).

█ Applying the rule and its background to the facts here, it is apparent that whether the light was red or green for one driver or the other at the time of the accident is distinctly a factual finding within the meaning of the rule, and certainly far more so than the HEW finding in *Ferndale*, which, we believe, is essentially an evaluative opinion resulting from evidence. It is also clear from the construction of the rule

---

6. The Senate's version of Rule 803(8) differed from the House's version in that the Senate's Rule referred to another proposed Rule, relating to the admissibility of certain criminal law enforcement records and reports, which was deleted by the Conference Committee. No reference to the differing views as to "factual findings" was made in the Conference Committee's Report. *See* 4 Weinstein's Evidence 803–23 (1977).

itself that factual findings admissible under Rule 803(8)(C) may be those which are made by the preparer of the report from disputed evidence, as contrasted to those facts which are "matters observed pursuant to duty imposed by law as to which matters there was a duty to report" called for under Rule 803(8)(B). The more conclusory nature of the HEW report, however, did not disturb our court in *Ferndale*, and it was concerned rather with the district judge's determination that the report lacked trustworthiness.

In determining whether the "sources of information or other circumstances" indicate lack of trustworthiness, the Advisory Committee Notes list four suggested factors for consideration: (1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held on the level at which conducted, and (4) possible motivational problems. *See* Notes of Advisory Committee on Proposed Rules, *reprinted following* Fed.Rules of Evid. 803, 28 U.S.C.A. The Advisory Committee further observed:

> The formulation of an approach which would give appropriate weight to all possible factors in every situation is an obvious impossibility. Hence the rule, as in Exception (6), assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present. In one respect, however, the rule with respect to evaluative reports under item (c) is very specific: they are admissible only in civil cases and against the government in criminal cases in view of the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case.

*Id.*

■ Because he did not rely on Rule 803(8), the trial judge did not make a specific finding of trustworthiness. We do not, however, consider the omission fatal. As the Advisory Committee notes, ". . . the rule, as in Exception (6), assumes admissibility in the first instance but with ample provision for escape if sufficient negative

factors are present." *Id.* The burden was upon the plaintiffs to show that the report was inadmissible because its sources of information or other circumstances indicated a lack of trustworthiness. That burden was not met here.

First, the report was timely because the police arrived at the scene of the accident minutes after it occurred. An investigation was begun immediately and although the final report was not issued for two months, a continuing effort was made to determine the facts.

Second, Sgt. Hendrickson, as a State Highway Patrolman with 28 years on the force, had investigated hundreds or even thousands of automobile accidents and his expertise and skill in accident reconstruction do not appear seriously to have been challenged. His attention to detail and his testimony concerning vector analysis make it apparent that he possessed special skill and experience in the investigation of automobile accidents.

The third factor concerns whether or not a hearing was held, and of course, no formal hearing was held in this case. The Rule, however, makes no reference to such a requirement; the factor appears only to be one of those suggested by the Advisory Committee. The evidence showed that Sgt. Hendrickson gathered all the evidence that he could from all sources. There is no indication that he neglected any one source or impermissibly preferred one over another. We do not believe that a formal hearing is a *sine qua non* of admissibility under Rule 803(8)(C) when other indicia of trustworthiness are present.

Finally, there is no indication that the report was made with any improper motive. Sgt. Hendrickson was completely independent of both parties and his testimony at the trial rather fully and convincingly demonstrated his impartiality.

We, therefore, conclude that the sergeant's own objective findings of fact, specifically his finding that the light was red for traffic approaching the intersection from the north, were admissible. The plaintiffs' objections go not so much to admissi-

bility as to weight and credibility, matters which are essentially for the jury to consider. It is true, of course, that Sgt. Hendrickson was not directly questioned concerning the color of the light at the time of the accident. Nevertheless, examination and cross-examination did corroborate the accident report in most other respects and there is no showing that the plaintiffs' right of cross-examination was restricted in any way. That they did not choose to do so was no doubt a matter of proper trial strategy but cannot affect the admissibility of the report in the first place.

Likewise the trial judge carefully instructed the jury concerning the admissibility of opinion testimony and no complaint can be made that those instructions were unfair or inadequate.

■ The appellants also challenge the admissibility of the report insofar as it contained the statement of the driver Slabach. This would not, in our judgment, be admissible under Rule 803(8). The statement was neither an observation nor a factual finding of the police officer, although Slabach's statement, with other evidence, no doubt had a bearing upon the ultimate factual finding made by the officer. Nonetheless we need not determine to what extent, where factual findings are admissible, the underlying data considered by the investigating officer are also admissible under Rule 803(8). It appears that under Rule 801, Slabach's statement was not hearsay. Rule 801(d)(1)(B) provides:

A statement is not hearsay if—

(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . .

(B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . .

Slabach was called for cross-examination by the plaintiffs in their case-in-chief. He was vigorously cross-examined about his recollection of the accident, particularly concerning when he had first seen the Valiant. The questioning of Slabach implied that his testimony in court differed from a statement he had made earlier, and therefore, it was proper under Rule 801 to introduce his prior statement given to the police officer as showing that, in fact, the testimony he gave at trial was consistent with prior statements and was not a recent fabrication or result of an improper influence or motive. Thus, Slabach's statement as appended to the police report was not hearsay, and thereby not inadmissible under Rule 802.

II.

■ Appellants urge that the district court erred in permitting counsel for the appellees to elicit from Sgt. Hendrickson the fact that no traffic citation was issued to Slabach. They argue that this testimony was inadmissible because it was irrelevant and immaterial to any issue in the case.[7] We need not reach the substance of this argument. Even assuming that the evidence of no traffic citation was improperly admitted into evidence, once the trial court had properly admitted the finding of Sgt. Hendrickson that plaintiffs' driver had run the red light, it had to be apparent to the jury that Sgt. Hendrickson would not have issued a traffic citation to Slabach. Thus the fact of non-citation would come as no surprise to the jury and could have no particular or additional impact on them. We believe that if the admissibility of this evidence was error, under the facts here, it was harmless error.

III.

■ Appellants claim that the trial court erred in overruling a motion for a directed verdict on the basis that the defendant was

7. Appellants do not specifically cite Fed.R.Evid. 401–403. While this testimony may be relevant under Rule 401, we question whether under Rule 403, the probative value of this evidence outweighs its prejudicial value. Because of our ruling that any error would not be prejudicial, however, we decline to decide this question.

guilty of negligence as a matter of law. They base this upon the evidence that Slabach testified that he could not see the color of the traffic signal when he passed through the intersection. Also, while not mentioned by the appellants, it appeared that Sgt. Hendrickson's observation that Slabach and the driver of the other car may have been guilty of inattention was admitted into evidence. On the other hand, the testimony of the driver of another truck which had proceeded westerly through the intersection shortly before Slabach indicated that he likewise had difficulty in seeing the light because of the location of the sun. This, with other evidence of Slabach's conduct and observations, is sufficient, in our judgment, to make the issue uniquely one for the jury.

### IV.

The appellants also complain of a portion of the instruction in which the trial judge instructed the jury that, to prevail, the plaintiffs had the burden of proving that the defendant's actions were "the sole cause of the accident". This statement, standing alone, would be error. Under Ohio law, the plaintiffs would be entitled to recover where both drivers concurrently were found guilty of negligence since the negligence of the plaintiffs' driver would not be imputable to the passengers. *Arrasmith v. Pennsylvania Railroad Co.,* 410 F.2d 1311, 1313 (6th Cir. 1969); *Canterbury v. Pennsylvania Railroad Co.,* 158 Ohio St. 68, 107 N.E.2d 115, 120 (1952).

The facts essentially admitted only one circumstance in which both drivers might have been negligent, that being the situation which would have existed had they proceeded into the intersection during that one second interval in which the light was red for traffic in all directions. At the conclusion of the charge, the court heard the objections to the charge, and specifically instructed the jury that in such a case, they could not impute any negligence of the driver of the Valiant to his passengers and that if both drivers entered the intersection during the one second interval, the jury must find for the plaintiffs. While perhaps the instructions might have been more artfully expressed, they adequately and fairly delineated the law in Ohio on the subject and the single, isolated reference, to "the sole proximate cause" made by the trial judge in his original instructions was adequately cured.

### V.

Finally, the appellants allege that the judgment of the district court was against the manifest weight of the evidence. We cannot agree. Given the limitations which the facts of the case presented for both sides, the case was fairly tried. The trial court's rulings were evenly balanced, and counsel for both sides conducted themselves with admirable skill. The fundamental difficulty in the case was that it was based primarily upon circumstantial evidence. It seems entirely likely that the jury, after hearing all of that evidence, was unable to conclude that the plaintiffs had sustained their burden of proving that the defendant driver was negligent and that for this reason it returned a judgment in favor of the defendants. While the decision was difficult, it is not one which we can disturb on appeal.

Affirmed.