Rosetta MILLER, Administratrix,
Plaintiff-Appellant,

v.

CATERPILLAR TRACTOR COMPANY,
Defendant-Appellee.

No. 81–1271.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 26, 1982.

Decided Jan. 5, 1983.

Philip A. Clancey (argued), Traverse City,
Mich., for plaintiff-appellant.

William D. Buchanan, Cholette, Perkins & Buchanan, Grand Rapids, Mich., Kenneth Block, Grand Rapids, Mich. (argued), for defendant-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges, and PRATT,* District Judge.

KRUPANSKY, Circuit Judge.

In this diversity breach of implied warranty/negligence action, plaintiff/appellant Rosetta Miller, administratrix of the estate of Paul Miller (Miller), appeals from a judgment of "no cause of action", dated March 4, 1981, which was entered pursuant to a jury verdict for defendant Caterpillar Tractor Company (Caterpillar) after a trial which had commenced on February 17, 1981, and concluded March 3, 1981.

The evidence submitted at trial supports the following underlying facts. Paul Miller was employed with Peninsular Asphalt Company as a truck driver. On July 31, 1972, Miller was instructed to haul material from "the Kasson pit", a sand and gravel operation located in Michigan which was owned and operated by the Peninsula Asphalt Corporation. The truck assigned to Miller consisted of a 619 C. Caterpillar Tractor, designed and manufactured by defendant Caterpillar Tractor Company, to which one PR 619 Athey Haulwagon, manufactured by Athey Products Corporation of Chicago, Illinois (not a defendant) was connected. The truck had been loaded to its 30-ton capacity and was parked by Miller on an off-loading ramp over a conveyor and on an 8½% grade. Miller dismounted the truck and began walking towards a hopper where feeder operator George Ciesla (Ciesla) was working. The truck began to roll down the grade whereupon Miller engaged pursuit and attempted to climb into the cab. The tractor passed from Ciesla's view at the crossroad in front of the hopper, and no eyewitness report existed of what occurred after Miller and the truck disappeared into a cloud of dust. Circumstantial evidence suggested, however, and plaintiff's counsel theorized in closing argument, that Miller had mounted and ridden the truck which apparently proceeded directly down the road, onto the right berm, and then veered to the left where the road was bordered by a high wall. It was surmised that Miller was crushed between the equipment and the wall and then run over by the rear tires of the vehicle. Miller's body was discovered face down approximately 247 feet from the point where the equipment had been parked. The truck continued to roll 367 beyond the point where Miller's body was discovered.

Appellant predicates reversible error upon failure of the district court to admit into evidence two reports offered as exceptions to the hearsay rule pursuant to Federal Rule of Evidence 803(8)(C) which provides in full:

> (8) *Public records and reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, *factual findings resulting from an investigation made pursuant to authority granted by law,* unless the sources of information or other circumstances indicate lack of trustworthiness. (emphasis added)

The Sixth Circuit has examined FRE 803(8)(C) in at least three reported decisions. *Dallas & Mavis Forwarding Co., Inc. v. Stegall,* 659 F.2d 721 (6th Cir.1981); *United States v. School District of Ferndale, Michigan,* 577 F.2d 1339 (6th Cir.1978); *Baker v. Elcona Homes Corporation,* 588 F.2d 551 (6th Cir.1978).

---

* Hon. Philip Pratt, United States District Judge, for the Eastern District of Michigan, sitting by designation.

The definition of "factual findings" within the meaning of FRE 803(8)(C) is a continuing subject of judicial controversy. In *Baker, supra,* it was noted that such controversy emanates from the unresolved interpretations attached to the term by the House and Senate. 588 F.2d at 556–57. In *Baker,* a diversity wrongful death action, a semi-tractor truck had collided with an automobile at an intersection controlled by a traffic light. The dispositive jury issue was a determination as to which vehicle entered the intersection with the green light. There were no eyewitnesses. Both plaintiffs and defendants presented expert testimony reconstructing the accident through vector analysis and use of a momentum formula. Sgt. John Henderson (Henderson), a police officer who had arrived at the scene of the accident within six minutes and had drafted an accident report, testified at length concerning the physical circumstances, measurements taken, descriptions of the locations of the vehicles and physical markings, etc. The district court admitted into evidence, under FRE 803(8)(C), Henderson's accident report which included the observation that "apparently unit # 2 [the Valiant] entered the intersection against a red light," even though this conclusion addressed the ultimate issue before the jury. The Sixth Circuit adjudged that the statement that the Valiant had run the red light was a "factual finding" within the meaning of FRE 803(8)(C). After observing that Henderson had been *qualified as an expert* in accident reconstruction, *Id.* at 555, the Court stated:

> Applying the rule and its background to the facts here, it is apparent that whether the light was red or green for one driver or the other at the time of the accident is distinctly a factual finding within the meaning of the rule ... which, we believe, is essentially an evaluative opinion *resulting from evidence.* It is also clear from construction of the rule itself that factual findings admissible under Rule 803(8)(C) may be those which are made by the preparer of the report from disputed evidence, as contrasted to those facts which are "matters observed

pursuant to duty imposed by law as to which matters there was a duty to report" called for under Rule 803(8)(B). *Id.* at 557–58 (emphasis added). The Court also adjudged that the sources of the information incorporated into the report together with other surrounding circumstances did not reflect a lack of trustworthiness. *Id.* at 558.

Accordingly, in *Baker, supra,* the Sixth Circuit affirmed admission of an investigative report including the conclusion or evaluation which was derived from personal observations of circumstantial evidence and which addressed the ultimate dispositive issue before the jury. While this construction of FRE 803(8)(C) appears liberal, it is evident that substantial weight was afforded to the factors that (1) the reporting officer had been qualified as an expert in the area in which the evaluation/conclusion was proffered, (2) the evaluation/conclusion was founded upon independently verifiable objective facts, and (3) the underlying factual observations were made directly by the reporting officer and were not predicated upon hearsay of statements taken from eyewitnesses.

In the most recent Sixth Circuit action, *Dallas & Mavis Forwarding Co., Inc. v. Stegall,* 659 F.2d 729 (6th Cir.1981), this Court affirmed the district court's refusal to admit pursuant to FRE 803(8)(C) a police officer's accident report which incorporated an opinion as to which of two vehicles had strayed from its lane of traffic. The Court concluded that the report lacked trustworthiness and was thus expressly excludable under the last sentence of FRE 803(8)(C); the report contained only opinion, rather than factual findings, and was supported solely by a statement provided by a single potentially biased eyewitness who was employed by one of the litigants.

Investigative reports in other circuits have been held inadmissible because they included evaluations or opinions which were not considered by the district court to be "factual findings", or were founded solely upon hearsay. *See: Franklin v. Skelly Oil Co.,* 141 F.2d 568 (10th Cir.1944); *Smith v.*

*Ithaca Corp.,* 612 F.2d 215 (5th Cir.1980); *Olender v. United States,* 210 F.2d 795, 801 (9th Cir.1954); *Colvin v. United States,* 479 F.2d 998 (9th Cir.1973); *John McShain, Inc. v. Cessna Aircraft Co.,* 563 F.2d 632 (3d Cir.1977); *McKinnon v. Skil Corp.,* 638 F.2d 270 (1st Cir.1981).

■ The first investigative report which was refused admission in the case at bar was prepared by Mining Engineer Curtis Stanius (Stanius), United States Bureau of Mines, pursuant to authority vested by statute, 30 U.S.C. §§ 3 and 5. The district court based its ruling to exclude the Stanius report upon the provision of FRE 803(8) permitting exclusion of public records when "the sources of information or other circumstances indicate lack of trustworthiness." The Court factually determined that (1) the investigation commenced approximately three days after the accident occurred, (2) the author of the report possessed no first-hand knowledge of the incident, (3) the author anchored the report upon information received from various other persons, (4) the sources of the information were suspect as to hearsay, (5) the report's author was a mining engineer and was not facially qualified to render opinions and conclusions relating to mechanical operations and/or failures, and (6) the report included a conclusion as to the cause of the accident which was not independently verifiable. This Court concludes that the Stanius Report did not possess that indicia of trustworthiness which underlies the hearsay exceptions in general and is implicitly recognized as a safeguard in the last sentence of FRE 803(8). As the Second Circuit has observed:

As with any exception to the rule against hearsay, Rule 803(8)(C) is to be applied in a commonsense manner, subject to the district court's sound exercise of discretion in determining whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission.

*City of New York v. Pullman Incorporation,* 662 F.2d 910, 914 (2d Cir.1981). The Stanius Report is more analogous to the document addressed by this Circuit in *Dallas & Marvis Forwarding Co.* than to the report underlying *Baker.*[1] The district court properly excluded the Stanius Report from admission. Further, any improper exclusion must be deemed harmless error. *See:* FRE 103; Rule 61, Fed.R.Civ.P.

■ Sergeant Roger DeVolder (DeVolder) also investigated the accident in the action at bar and prepared a police report which was also offered as evidence under FRE 803(8)(C) and refused admission by the district court as "untrustworthy" since the document relied upon hearsay statements of the witnesses interviewed by the investigator. As with the Stanius Report, the district court did not abuse its discretion in excluding the report, and any such error would have been harmless; indeed, the most probative aspect of the report states "Vehicle Defects: (x) none".

■ The district court overruled plaintiff's objection to interrogation of the surviving spouse which sought to elicit receipt of payments made under the Workmens' Compensation Act arising from the death of her husband. On appeal, plaintiff argues that elicitation of such testimony violated

---

1. Miller submits *Moran v. Pittsburgh-Des Moines Steel Co.,* 183 F.2d 467 (3d Cir.1950) in support of admission of the Stanius Report. In *Moran,* the Third Circuit adjudged that a Bureau of Mines report which contained a conclusion as to the cause of a tank explosion (which was the ultimate jury issue) *was* admissible, stating:

> The report is no less admissible because it contains conclusions of experts which are based upon hearsay evidence as well as upon observation. These circumstances, by virtue of express statutory provision, go to weight rather than to admissibility.

*Id.* at 473. The precedential value of *Moran* is suspect, however, since the Court was interpreting 28 U.S.C. § 1732, the business report statute and predecessor of FRE 803(8), which expressly stated at that time:

> All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

*Id.* at 473. FRE 803(8)(C) contains no such similar statement.

the collateral source rule. *Shimel v. Interstate Motor Freight,* 5 Mich.App. 143, 146 N.W.2d 130 (1966). Resolution of the propriety of this line of questioning is unnecessary since the error, if any, was obviously harmless: the jury never reached the issue of damages and therefore the testimony could not have contributed to its verdict of no cause of action.

■ In the case at bar, after the jury was charged, and had returned to the jury room with an admonition not to discuss the case, the following colloquy occurred between the Court and plaintiff's counsel.

COURT: Mr. Clancey, this is the time for you to put anything on the record you wish regarding the jury instructions or otherwise.

CLANCEY: Thank you, your Honor. It is our belief that the instructions should have included a proviso to the jury that if the jury found that there was a latent defect in design to manufacture and that the Defendant failed to communicate that the nature of that defect to the foreseeable user and that defect presented a risk of harm or injury that the—and that the absence of that warranty was the proximate cause of the injuries to the Plaintiff's decedent—that the Plaintiff would be entitled to a verdict.

COURT: Was that instruction requested specifically?

CLANCEY: Yes, your Honor.

COURT: Very well. Do you have a number for that instruction for—just for the record, Mr. Clancey?

CLANCEY: My associate will try to come up with that number as promptly as possible, your Honor. I believe that instruction was specifically requested in chambers and it was part of an Athey case of our requested instructions number 6, your Honor.

COURT: Well, I just want the record to reflect whether or not you specifically requested the Court to give that instruction.

\* \* \* \* \* \*

COURT: Well, the problem is, Mr. Clancey, is that on one page that you have submitted here—well, let me say this, Mr. Clancey, it's difficult to know what instructions you requested.

\* \* \* \* \* \*

COURT: Well, in any event, I think you have the burden of establishing that you specifically requested the Court of giving that instruction and you have made your objections noted on the record.

The district court labored under the false impression that plaintiff had waived the suggested jury instruction because it had not been expressly requested in chambers prior to presentation of the charge. However, the challenge to the jury instructions was timely under Rule 51, Fed.R.Civ.P., since the case had not yet been submitted for deliberation and judgment:

Rule 51. \* \* \* No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury *retires to consider its verdict,* stating distinctly the manner to which he objects and the grounds of his objections. \* \* \*

The district court should have addressed the propriety of the requested instruction rather than summarily rejecting it because plaintiff failed to satisfy the "burden of establishing that [the charge was] specifically requested."

Although the district court did not provide plaintiff with the opportunity to offer legal authority to support the requested charge, or to identify evidence which would have created a jury question as to whether the elements of the law had been satisfied, plaintiff's appellate brief offers two legal and factual theories to support the requested charge. The first theory is that Caterpillar had installed a hand parking brake which was capable of being removed, and which had been removed, thereby creating a latent risk of injury when the 619 Tractor was connected to a 619 Athey Haulwagon, thereby breaching Caterpillar's duty to warn operators of this potential latent defect. The argument is without merit since a manufacturer has no legal duty to install

a safety device which cannot be removed. *LaBeau v. Allen Steel & Supply Co.,* No. 15323 (Mich.App.1974) (guard removed from Black & Decker saw).

Plaintiff's second theory charges that Caterpillar sold the parking brake as optional equipment and never installed a parking brake on the 619 Tractor in issue and did not warn the operator of the potentially dangerous latent risk which was created when the 619 Tractor was connected to a 619 Athey Haulwagon. This cause of action is cognizable. Michigan law requires a manufacturer which incorporates a design attended by latent risks of injury to adequately communicate the nature of that risk to foreseeable users of the product. *Owens v. Allis Chalmers Corp.,* 83 Mich. App. 74, 268 N.W.2d 291, 294–95 (1978). It appears that such a cause of action may be predicated upon a theory of negligence, whereby a manufacturer's liability to persons injured by its product is assessed by determining if the risk to the injured individual was unreasonable and foreseeable by the manufacturer, *Smith v. E.R. Squibb & Sons,* 405 Mich. 79, 273 N.W.2d 476 (1979), or under a theory of implied warranty, whereby a manufacturer has a duty to supply all information and warnings that the user would need to operate the unit safely. The district court, charging on negligence, gave the following instruction on duty to warn:

> In some cases the law imposes on the manufacturer the obligation to give appropriate warnings of any dangerous conditions which are likely to be encountered. If you find from the evidence that a reasonable, careful person would have issued appropriate warnings under the circumstances disclosed to you by the evidence, then you may find that the Defendant was negligent if such warnings were not given. In reaching a decision on this case on this issue you should bear in mind that the law does not impose on a manufacturer the obligation of warning users of its products of danger of which they are or should already be aware.

A similar instruction was not provided under the charge relating to implied warranty. However, the Michigan Supreme Court has observed that while negligence and implied warranty are distinct causes of action,

> when the factual issue is not whether the product itself is defective, but is whether the manufacturer has provided adequate warnings, the existence of a product defect and a breach of duty is determined by the same standard—reasonable care under the circumstances. * * * On the facts, therefore, the two theories involve identical facts and require proof of exactly the same elements. This is true because the focus is upon the *adequacy* of the warnings, regardless of the theory of liability.

> \*      \*      \*      \*      \*      \*

> Consequently, when liability turns on the adequacy of a warning, the issue is one of reasonable care, regardless of whether the theory pled is negligence, implied warranty or strict liability in tort.

*Smith v. E.R. Squibb & Sons, Inc.,* 405 Mich. 79, 273 N.W.2d 476, 480 (1979) (original emphasis). Accordingly, it appears that Caterpillar's duty to warn was adequately presented to the jury irrespective of the Court's failure to incorporate the word "latent" into the charge.

The judgment of the district court is hereby AFFIRMED.