**Lawrence William FARIES, Appellant,**

v.

**ATLAS TRUCK BODY MFG. CO., a corporation, Appellee.**

No. 85–1321.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 17, 1986.

Decided Aug. 28, 1986.

455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

**44.** *See supra* notes 14–20 and accompanying text.

James Reeves, Caruthersville, Mo., for appellant.

John P. Bradshaw, Independence, Mo., for appellee.

Before HEANEY, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

McMILLIAN, Circuit Judge.

Lawrence William Faries appeals from a final judgment entered in the District Court for the Eastern District of Missouri upon a jury verdict in favor of defendants American Honda Motor Corp., Honda Motor Co. and Atlas Truck Body Manufacturing Co. (Atlas Truck) in this strict liability case. For reversal Faries argues that the district court erred in (1) instructing the jury on comparative fault and (2) admitting into evidence the state highway patrol accident report and certain testimony of the investigating state highway patrol trooper. For the reasons discussed below, we reverse and remand.

On May 21, 1981, at about 11:30 a.m., Faries was riding a Honda motorcycle and was involved in an accident with a milk truck driven by Ernest Riley. Faries lost his left leg just above the knee as a result of the accident. Faries brought this diversity action against the manufacturer of the motorcycle, American Honda Motor Corp. and Honda Motor Co., and Atlas Truck, the manufacturer of the milk truck. Faries alleged that the defective design of the milk truck's rear bumper guard and the lack of adequate leg guards or crash bars on the motorcycle enhanced the slight injury caused by the initial collision.

The accident occurred on a curved and hilly portion of a two-lane rural highway in the Missouri Ozarks. At the time of the accident the weather was clear and the asphalt road surface was dry. Faries was westbound and the milk truck was eastbound; at the site of the accident the highway rises slightly and curves to the right as one travels west. Each side presented a different theory of the accident.

According to Faries, the milk truck sideswiped his motorcycle. Faries testified that he was travelling at about 40–45 m.p.h. in the westbound lane when he saw the milk truck approach around the curve in the highway. He testified that the motorcycle was leaning about 15–20 degrees off vertical and to the right and that he was in the center-left portion of his traffic lane. Faries testified that the milk truck had crossed the center line and was partly in the westbound traffic lane. He tried to avoid the milk truck, but the motorcycle hit and then glanced off the milk truck. The initial collision was slight and he remained on the motorcycle in an almost upright position. However, the impact was sufficient to cause the motorcycle to slide along the side of the milk truck, and the milk truck's left rear bumper guard hooked his left leg and caused the amputation.

The defendants argued that the motorcycle and the milk truck were not defectively designed. According to the defendants' theory of the accident, the milk truck was travelling within its traffic lane, but Faries was travelling at an excessive rate of speed

and leaning at least 45 degrees off vertical when he lost control of the motorcycle around the curve of the highway. The motorcycle skidded across the center line into the eastbound traffic lane and collided with the left rear part of the milk truck. Atlas Truck argued that the rear bumper guard did not cause Faries' injury and that Faries's left leg was severed because Faries was thrown into the left rear wheel well of the milk truck, not against the rear bumper guard, as the motorcycle slid partially under the milk truck.

Missouri State Highway Patrol Trooper Alton Clark investigated the accident. He arrived shortly after the accident occurred; observed the scene and the relative positions of Faries, the motorcycle and the milk truck; interviewed the milk truck driver and the driver's son (the son was a passenger in the milk truck); noted and measured the length of fresh gouge marks or skid marks and estimated their position on the pavement; and prepared an accident report which included a schematic diagram of the accident.

The district court removed two sections of the accident report and admitted the accident report as edited into evidence. Trooper Clark also testified at trial that, in his opinion, Faries had been travelling at an excessive speed around the curve when he lost control of the motorcycle and crossed over the center line into the path of the approaching milk truck.

Both sides presented expert witnesses to support their respective theories of how the accident occurred and whether the motorcycle and the rear bumper guard were defectively designed.

Over Faries's objections, the district court applied the doctrine of comparative fault and instructed the jury accordingly. The jury returned a verdict in favor of the defendants. This appeal followed. While the case was pending on appeal, Faries reached a settlement with the Honda defendants. Only Atlas Truck remains as appellee.

## COMPARATIVE FAULT IN STRICT LIABILITY

Faries first argues that the district court erred in instructing the jury about the doctrine of comparative fault in this strict liability case. We apply Missouri law in this diversity action. The Missouri Supreme Court adopted the doctrine of comparative fault in a negligence case in *Gustafson v. Benda*, 661 S.W.2d 11, 15–16 (Mo. 1983) (banc). Citing *Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434 (Mo.1984) (banc), Faries argues that the Missouri courts would not extend the doctrine of comparative fault to a strict liability case, particularly a strict liability case involving the second collision or crashworthiness doctrine.

At the time this case was tried, the Missouri Supreme Court had not yet spoken on the question whether the doctrine of comparative negligence should apply in strict liability cases. In the absence of a definitive ruling from the state supreme court, "it is the duty of a federal court to apply the rule it believes that a state supreme court would follow." *Garoogian v. Medlock*, 592 F.2d 997, 1000 (8th Cir.1979). The district court reasonably predicted, as did this court in *Gearhart v. Uniden Corp. of America*, 781 F.2d 147, 149–52 (8th Cir.1986), that the Missouri Supreme Court would apply the doctrine of comparative fault adopted in *Gustafson v. Benda* in strict liability cases. Subsequent developments have proved, however, that these predictions were not correct. On August 1, 1986, the Missouri Supreme Court held that the doctrine of comparative fault should not be applied in strict liability cases. *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491, 493–94 (Mo.1986) (banc), *rev'g* No. 49226 (Mo.Ct. App.1985).

Because of certain evidentiary errors discussed below, we reverse and remand the case for further proceedings. In light of the Missouri Supreme Court's decision in the *Lippard v. Houdaille Industries, Inc.* case, if the case is retried, the district court should not instruct the jury on the doctrine of comparative fault.

## ACCIDENT REPORT AND EXPERT TESTIMONY

Faries next argues that the district court erred in admitting into evidence the accident report and certain parts of the opinion testimony of Trooper Clark. Faries argues that factors such as the inadequacy of the investigation and the use of biased sources of information are circumstances which demonstrate a lack of trustworthiness. We agree in part.

The accident report was admitted as a public record pursuant to Fed.R.Evid. 803(8)(C) which provides in part that "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness," are not excludable as hearsay. *See, e.g., Meder v. Everest & Jennings, Inc.,* 637 F.2d 1182, 1187–88 (8th Cir.1981) (police report of incident involving wheelchair); *Hill v. Rolleri,* 615 F.2d 886, 889–90 & n. 3 (9th Cir.1980) (police report of motor vehicle accident); *Baker v. Elcona Homes Corp.,* 588 F.2d 551, 558 (6th Cir.1978) (police report of motor vehicle accident), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979); *cf. Smith v. Ithaca Corp.,* 612 F.2d 215, 221 (5th Cir.1980) (Coast Guard report); *Lloyd v. American Export Lines, Inc.,* 580 F.2d 1179, 1182–83

(3d Cir.) (decision of Coast Guard hearing examiner), *cert. denied,* 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978); *Smith v. Spina,* 477 F.2d 1140, 1146 (3d Cir.1973) (pre-Fed.R.Evid.; arrest report); *see generally* D. Louisell & C. Mueller, Federal Evidence §§ 454–456 (1980).

In *Baker v. Elcona Homes Corp.* the Sixth Circuit outlined four factors to consider in determining the trustworthiness of a public record: the timeliness of the investigation, the special skill or experience of the investigating officer, whether a hearing was held and the level at which the hearing was conducted, and any possible motivational problems. 588 F.2d at 558, *citing* Fed.R.Evid. 803(8)(C) advisory committee note (Exception (8)). Other factors to consider include "the presence or absence of checking procedures, the simplicity or complexity of the matter reported and the degree to which the matter reported is relied upon outside the immediate context of the litigation in which the evidence is offered." 4 D. Louisell & C. Mueller, Federal Evidence § 456, at 769. The party opposing the admission of the matter reported as a public record has the burden of proving lack of trustworthiness. *E.g., Meder v. Everest & Jennings, Inc.,* 637 F.2d at 1188.

In the present case the investigation was timely. The Missouri State Highway Patrol is the agency authorized to investigate highway accidents, and Trooper Clark was a trained and experienced accident investigator who was impartial and independent. However, the record indicates, that at least insofar as this accident was concerned, Trooper Clark's investigation of the physical scene of the accident was not complete. There were no measurements of the relative positions of Faries, the motorcycle and the milk truck, or of the positions of the gouge or skid marks on the highway, and Trooper Clark interviewed only the driver of the milk truck and did not continue the investigation or interview Faries after he was discharged from the hospital. *Cf. Dal-*

*las & Mavis Forwarding Co. v. Stegall,* 659 F.2d 721, 722 (6th Cir.1981) (order) (state trooper's opinion derived primarily from story of biased eyewitness not admissible as expert opinion per Fed.R.Evid. 703).

We note in particular that Trooper Clark testified that he did not determine whether the gouge or skid marks were made before or after impact and could not determine the point of impact on the highway and that the condition of the milk truck's left rear bumper and tire indicated only that there had been some sort of impact. Nonetheless, the accident report as admitted contained the statement that "[a]pparently [Faries] was driving at an excessive rate of speed, lost control on a curve, crossed over the center line, overturned and slid under [the milk truck]." This statement was essentially Trooper Clark's opinion about the cause of the accident in written form, rather than an investigatory finding. *See Dallas & Mavis Forwarding Co. v. Stegall,* 659 F.2d at 722.

■ The accident report contained very little physical data or evidence to support the statement describing the cause of the accident, a description which was largely based upon the statements of an interested eyewitness, the driver of the milk truck. Nor was there any method for checking or corroborating the accident report, and it was impossible for the jury to evaluate its trustworthiness. Under these unusual circumstances, the accident report lacked trustworthiness and should not have been admitted as a public record under Fed.R. Evid. 803(8)(C).

Faries also argues that the district court erred in admitting certain parts of Trooper Clark's opinion testimony about the accident. Trooper Clark testified that, in his opinion, at the time of the accident, Faries had been driving at an excessive speed for the road conditions when he lost control of the motorcycle around the curve of the highway and crossed the center line into the eastbound traffic lane. Faries argues that the district court erred in permitting Trooper Clark to testify as an expert because Trooper Clark did not base his opinions on facts or data "of a type reasonably relied upon by [accident reconstruction] experts." Fed.R.Evid. 703; *see, e.g., Soden v. Freightliner Corp.,* 714 F.2d 498, 502–05 (5th Cir.1983); *Dallas & Mavis Forwarding Co. v. Stegall,* 659 F.2d at 722.

■ In view of our prior discussion of the adequacy of the accident investigation and admissibility of the accident report, Faries's argument that Trooper Clark's expert testimony was not supported by sufficient evidence or investigation has merit. "[A]n expert witness may give his [or her] conclusions without prior disclosure of the underlying facts ...; [however], [t]here must ... be sufficient facts already in evidence or disclosed by the witness as a result of his [or her] investigation to take such [expert opinion] testimony out of the realm of guesswork and speculation." *Polk v. Ford Motor Co.,* 529 F.2d at 271, *citing* Fed.R.Evid. 105. Here, we find neither sufficient facts in evidence nor evidence found by Trooper Clark as a result of his investigation and disclosed sufficient to take his opinion out of the realm of guesswork and speculation.

The testimony of Trooper Clark was primarily a repetition of his conclusions in the accident report. As noted previously, Trooper Clark's measurements at the accident site were incomplete. The instant case is unlike *Bonner v. Polacari,* 350 F.2d 493, 496 (10th Cir.1965) (pre-Fed.R.Evid.), in which the police officer's opinion was admitted because he consistently maintained that his estimate of the speed of a car involved in an accident was based on verifiable comprehensive physical findings at the accident site. Thus, we are once again confronted with the problem of Trooper Clark's dependence on information

provided by the milk truck driver in forming his opinion.

Under Fed.R.Evid. 703, the facts underlying an expert's opinion may be those "made known to him [or her] ... if [they are] of a type reasonably relied upon by experts in a particular field." The rule contemplates that facts and data which are otherwise inadmissible as hearsay may be used by experts in forming opinions if they meet the criteria of "reasonable reliance." *Soden v. Freightliner Corp.*, 714 F.2d at 502. Nevertheless, the Advisory Committee Notes to Fed.R.Evid. 703 specifically mention that observations of eyewitnesses do not satisfy this criteria and cannot be used by experts in accident reconstruction. The court in *Dallas & Mavis Forwarding Co. v. Stegall* refused to admit the expert opinion of the investigating officer which was based on the statement of the defendant truck driver because "to permit his [eyewitness] opinion to be heard through the testimony of an official would cloak it with an undeserved authority that could unduly sway a jury." 659 F.2d at 722. "Although courts may allow experts a great deal of discretion in choosing the base for their opinions, the court must examine the reliability of their sources." *Soden v. Freightliner Corp.*, 714 F.2d at 505 (citations omitted). Trooper Clark's use of the statements of the milk truck driver in forming his opinions required the exclusion of his testimony regarding Faries' excessive speed and loss of control of the motorcycle at the time of the accident.

■ The admission of the accident report and the testimony was not harmless error because the other experts utilized the trooper's findings in giving their opinions on the cause of the accident. Furthermore, the trooper's report and opinion were frequently referred to by defense counsel throughout the trial. Therefore, the admission of the accident report and Trooper Clark's expert opinion regarding Faries' excessive speed and loss of control of the motorcycle are reversible error.

Accordingly, the judgment of the district court is reversed and the case is remanded to the district court for further proceedings.