DECKER v NORFOLK AND WESTERN RAILWAY COMPANY

1. NEGLIGENCE—INSTRUCTIONS TO JURY—RAILROADS—WARNING DE-
   VICES—STATUTES.

   Refusal of a trial court to give a defendant's requested instruction
   to the jury was proper where the instruction, regarding the
   issue of whether a railroad breached its duty to maintain a
   crossing in a reasonably safe condition, would have precluded
   the jury from considering whether the railroad should have
   utilized other methods of warning in addition to the sign which
   was erected at the crossing; a statute which prohibits the
   erection of warning devices at a crossing without authorization
   does not abrogate a railroad's duty to maintain a crossing in a
   safe condition (MCLA 257.615; MSA 9.2315).

2. NEGLIGENCE—INSTRUCTIONS TO JURY—RAILROADS—WARNING DE-
   VICES.

   A trial court properly instructed a jury that they should deter-
   mine whether in light of all the facts and circumstances
   reasonable prudence required a defendant railroad to maintain
   warning devices at a highway crossing in addition to the signs
   required by law where the evidence showed that the crossing in
   question was a double-track crossing which intersected the
   roadway at an angle such that a person in an automobile had
   to turn his whole body to see down the tracks, and at the time
   of a collision between a train and an automobile visibility was

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Flagman: duty to maintain. 24 ALR2d 1161.
  Signals: failure of signaling device at crossing to operate, as affect-
    ing railroad company's liability. 90 ALR2d 350.
  Railroad crossing: customary or statutory signal from train as
    measure of railroad's duty as to warning at highway crossing. 5
    ALR2d 112.
[3] 76 Am Jur 2d, Trial §§ 1154–1162.
[4] 5 Am Jur 2d, Appeal and Error § 836.
  22 Am Jur 2d, Damages § 366.
  Constitutional or statutory provision forbidding re-examination of
    facts tried by a jury as affecting power to reduce or set aside
    verdict because of excessiveness or inadequacy. 11 ALR2d 1217.

only 100 to 150 feet, during an evening snowstorm, and the train was traveling at 70 miles per hour.

3. Jury—Jury Verdicts—Inconsistent Verdicts—Negligence—Duty of Care.

Jury verdicts which have a logical explanation will not be found inconsistent; a verdict in favor of an automobile driver who was injured in a collision with a train, which held the railroad to be negligent but found no cause of action as to the train's engineer, was not thereby inconsistent because the railroad's duty of care extended beyond the actions taken by the engineer.

4. Damages—Jury Verdict—Excessive Damages—Evidence—Just Compensation.

A jury verdict of damages should not be set aside as excessive so long as the amount awarded is within the range of the evidence and within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries sustained and pain and suffering.

Appeal from Wayne, George T. Martin, J. Submitted December 14, 1977, at Detroit. (Docket No. 30938.) Decided March 7, 1978. Leave to appeal applied for.

Complaint by Harvey Decker, Jr., and Delores Decker against Norfolk and Western Railway Company and John B. Miller for damages for injuries received by Harvey Decker, Jr., in an automobile-train collision. Judgment for plaintiffs as against Norfolk and Western only. Norfolk and Western appeals. Affirmed.

*Lampert, Fried & Levitt, P. C.,* for plaintiffs.

*Bodman, Longley, Bogle & Dahling* (by *Frederick C. Nash),* for defendant Norfolk and Western Railway Company.

Before: N. J. Kaufman, P. J., and Bronson and D. E. Holbrook, JJ.

D. E. Holbrook, J. This personal injury action

arises from a January 29, 1971, accident at a railroad crossing in Van Buren Township, Wayne County, Michigan, between plaintiff's automobile and defendant's train. At approximately 8 p.m., plaintiff, Harvey Decker, Jr., was struck by a train owned and operated by defendant, Norfolk and Western Railroad, at the intersection of Martz Road and the Norfolk and Western's tracks. At the time of the accident, the train was traveling approximately 70 miles per hour. It was dark with a heavy snow falling which made visibility very poor. Because of the poor visibility, the plaintiff testified that he was not able to see more than 100 to 150 feet down the railroad tracks. After trial by jury, a verdict was returned in favor of Harvey Decker, Jr., in the amount of $800,000 and in favor of Delores Decker, his wife, in the amount of $100,000 in her claim for loss of consortium, services and companionship. On October 14, 1976, defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. Defendant thereupon claimed an appeal to this Court.

The first issue defendant raises is that the trial court erred in refusing to instruct the jury as requested by defendant that there was no duty on the railroad to install advance or automatic crossing protection at the Martz Road crossing at or before the time of the accident.

The defendant requested the following supplemental instruction: "There has been testimony concerning advance or automatic crossing protection. You are instructed that there is no duty upon the Railroad to install such protection in this case and such testimony shall play no part in your deliberations." The request was denied by the trial court.

This issue was raised by defendant in its motion

for judgment notwithstanding the verdict or for a new trial. The trial judge held: "1. Defendant's supplemental request to charge (No. 1) was not given because it would deprive the jury of its determination of testimony regarding protection at the railroad crossing."

Defendant maintains that under MCLA 257.615; MSA 9.2315,[1] the railroad was unable to erect devices at the crossing in addition to the crossbuck sign unless authorized to do so by statute or by an authorized public body or official, and no such authorization had been given. Therefore, it was error not to give the requested supplemental instruction.

Defendant cites *Masters v Grand Trunk W R Co,* 13 Mich App 80, 82–83; 163 NW2d 661 (1968), wherein the Court stated:

"The trial court's interpretation of the statute [MCLA 257.615; MSA 9.2315] was strict and did not deprive the plaintiff of jury consideration concerning the common-law duties of a railroad to act in a manner that a jury might find reasonable under the circumstances, *but merely absolved the railroad from a duty to install additional signs and signals.* In addition to giving the substance of plaintiff's requests on general common-law duties and definitions of negligence, the court instructed the jury in substance that *if the crossing was found by them to be unusually dangerous, outlining the facts and*

---

[1] "(a) Except with authority of a statute or of a duly authorized public body or official, no person shall place, maintain, or display along any highway or upon any structure in or over any highway any sign, signal, marking, device, blinking, oscillating or rotating light or lights, decoration or banner which is or purports to be or is in imitation of or resembles or which can be mistaken for a traffic control device or railroad sign or signal, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of any traffic control device or any railroad sign or signal, and no person shall place or maintain nor shall any public authority permit upon any highway any traffic sign or signal bearing thereon any commercial advertising."

*circumstances that could make it such, the railroad must meet the peril by commensurate precautions, but that because of the statute it was not required to post additional warning signs.*

"The court properly advised the jury that the duty to maintain crossings in a reasonably safe condition was not abrogated by the statute. *Such other means might include a flagman, whistles or other efficient local warnings* as discussed in *Bauman v Grand Trunk Western Railroad Company* (1965) 376 Mich 675 [138 NW2d 285]. Unlike that case, however, here the issues were presented to the jury and it found no cause of action. *The charge as given fairly reflects the principle that while a railroad is not absolved from its common-law duty of maintaining its crossings in a reasonable manner, it cannot be held accountable for the failure to erect signs where such choice of whether or not to erect is precluded by statute.*" (Emphasis added.)

Therefore, defendant claims that the erection of the signs and traffic control devices, such as flashers and gates, is not one of the ways remaining open to the railroad for carrying out its common-law duty. Defendant cites *Masters, supra,* and *Johnson v Grand Trunk W R Co,* 58 Mich App 708; 228 NW2d 795 (1975), and states: "There are unquestionably other ways in which, where the circumstances justify it, the railroad may carry out its common law duty without violating the statute," *i.e.* the use of flagmen, whistles or other efficient local warnings.

Defendant's reliance on the instructions in *Masters, supra,* is misplaced. In *Masters, supra,* at 83, the instruction was:

"[T]he court instructed the jury in substance that if the crossing was found by them to be unusually dangerous, outlining the facts and circumstances that could make it such, the railroad must meet the peril by commensurate precautions, but that *because of the*

*statute it was not required to post additional warning signs."* (Emphasis added.)

In the instant case, the defendant asked that the jury be instructed: "There has been testimony concerning *advance* or automatic crossing protection. You are instructed that there is no duty upon the Railroad to install such protection in this case and such testimony shall play no part in your deliberations." (Emphasis added.) Defendant in its requested instruction has gone beyond *Masters, supra,* which held that defendant cannot be required to post additional *warning signs.* In the instant case, defendant includes *"advance or automatic crossing protection".* This is too broad and would have had the effect of directing a verdict to defendant and abrogating the defendant's duty to maintain the crossing in a reasonably safe condition. The other means available to maintain a safe crossing as mentioned in *Masters, supra,* and *Bauman v Grand Trunk W R Co,* 376 Mich 675; 138 NW2d 285 (1965), *i.e.,* a flagman, whistles, etc., would be considered "advance" crossing protection and the jury would be prohibited by such an instruction from considering such means of warning in determining if defendant breached its common-law duty to maintain a safe crossing.

The trial judge properly refused to give defendant's supplemental instruction number one and defendant's issue is without merit.

The next issue defendant raises on appeal is that the trial judge erred in instructing the jury that "The jury must determine whether in light of all the facts and circumstances surrounding the Martz Road crossing, reasonable prudence required the railroad, Norfolk & Western, to maintain devices warning the motorist of its approach-

ing train in addition to the crossbuck signs required by law and present at the crossing".

The instruction at issue was contained in the following instructions to the jury:

"I charge you, members of the jury, that the railroad's duty of due care may require it to provide warnings over and above those provided by statutory law or statutory regulations. The test is not whether the conditions were unusually dangerous, but whether what was done under the circumstances met the test of an ordinary prudent man, under the same or similar circumstances.

"I further charge you that compliance with the orders of the Michigan Public Service Commission is among the circumstances and certainly evidence that the jury should consider in determining whether the railroad was negligent, but compliance with the Commission's order is only one of the circumstances that the jury shall consider.

"*The jury must determine whether in light of all the facts and circumstances surrounding the Martz Road crossing, reasonable prudence required the railroad, Norfolk & Western, to maintain devices warning the motorist of its approaching train in addition to the crossbuck signs required by law and present at the crossing.*

"If the jury determines there was such a duty and the railroad failed to provide additional warning devices, the jury must decide whether such failure to provide additional warning devices proximately caused the collision." (Emphasis added.)

The defendant asserts that this instruction was erroneous in its motion for judgment notwithstanding the verdict or for a new trial. The trial judge held:

"The charge given to the jury by the court as to the railroad's duty of due care was conditioned upon the jury's determination from the evidence. The testimony

at trial was sufficient to justify the charge. This court relied upon the law stated in *Emery v Chesapeake & Ohio Railway Co.,* 372 Mich 663 [127 NW2d 826 (1964)]; *Ebel v Board of County Road Commissioners of the County of Saginaw,* 386 Mich 598 [194 NW2d 365 (1972)]; and *Johnson v Grand Trunk Western Railroad Co.,* 58 Mich App 708 [228 NW2d 795 (1975)]."

This Court in *Johnson v Grand Trunk W R Co,* 58 Mich App 708, 716–717; 228 NW2d 795 (1975), stated:

"It is undisputed that Grand Trunk was in compliance with the 1933 and 1946 MPSC orders. However, compliance with MPSC orders does not preclude a finding of negligence. *Emery v Chesapeake & O R Co,* 372 Mich 663; 127 NW2d 826 (1964); *Ebel v Saginaw Road Commissioners,* 386 Mich 598; 194 NW2d 365 (1972). In *Ebel,* plaintiff's car collided with a flasher warning device installed pursuant to a 1928 MPSC order. In remanding for a new trial because of the trial court's refusal to instruct the jury on the railroad's common-law duty to maintain safe crossings, the Court said:

" 'In *Emery v Chesapeake & O R Co,* 372 Mich 663; 127 NW2d 826 (1964), and in *Baldinger v Ann Arbor R Co,* 372 Mich 685; 127 NW2d 837 (1964), this Court treated extensively of the "unusual conditions" or "special circumstances" and "local warnings" rule, and reaffirmed the long-standing rule that the railroad's duty of due care may require it to provide warnings over and above those required by statutory law or safety regulations. The test is not whether the conditions were *unusually* dangerous, but whether what was done under the circumstances met the test of an ordinarily prudent man under the same or similar circumstances.

\* \* \*

" 'Compliance with the commission's orders for the installation and maintenance of certain warning devices are among the circumstances and certainly evidence the *jury* should consider in determining whether

the railroad was negligent, but it cannot be said as a matter of law that compliance with such commission's order is to be equated as freedom from negligence.' *Ebel, supra,* 386 Mich 598, 605–606; 194 NW2d 365, 368." (Emphasis in original.)

Defendant claims that plaintiffs failed to present a prima facie case that defendant had breached its common-law duties, for the reason that there was nothing with respect to the Martz Road crossing from which the jury could reasonably infer that additional safeguards were required. Defendant cites *Baldinger v Ann Arbor R Co,* 372 Mich 685; 127 NW2d 837 (1964), in support of its position, The Court in *Baldinger, supra,* at 690 stated:

"Now we must ascertain whether, on due favorable view, the proof entitled plaintiff to an instruction authorizing jury determination of the posed question, that is, whether the circumstances were of such nature as to call for 'some efficient local warning,' over and above statutory requirements and the requirements of safety regulations promulgated by the public service commission."

The Court in *Baldinger* answered this by stating at 691–693:

"Upon such favorably assembled presentation plaintiff claims that the combination of bad weather and the described obstruction of view presented, for jury consideration, question whether the railroad should, under the aforesaid 'dangerous crossing' rule, have posted 'a flagman or a watchman at the crossing on this day,' or should have stopped the train to 'send a flagman on ahead to warn traffic before crossing this unusually dangerous crossing.' To this we are constrained to reply that no respectable authority has been cited *holding that, at a typical open country single track rail crossing of a secondary road, where there is a partial obstruction of view of a train approaching from given direction on a*

*straight track, the highway approach being at the same
or substantially same level as that of the track and the
upper half of the train being day-time visible for a
thousand and more of the approach-feet thereof, such
circumstances permit submission to the jury of what we
may rightly call the 'dangerous crossing' rule."* (Emphasis added.)

The facts in the instant case are not the same as in *Baldinger.* In *Baldinger* there was a single track crossing, but in our case, it was a double track crossing; in *Baldinger* the upper half of the train was day-time visible for 1,000 feet, but in the instant case, the plaintiff could only see 100 to 150 feet. In *Baldinger* the tracks intersected with the road at a 90-degree angle allowing a full view both ways down the tracks, but in the case at bar, the tracks intersected at a 40-degree angle and a person had to turn their whole body to see down the tracks; also, in *Baldinger* the accident occurred at noon on a rainy day in July, whereas this collision occurred during an evening snowstorm; additionally, in *Baldinger* the train was traveling 37 to 45 miles per hour, but, in the instant case, the train was traveling at 70 miles per hour.

This Court takes notice that the defendant in its closing argument described the Martz Road crossing as a "dangerous crossing" and inferred it was an "exceeding dangerous crossing". We find it incongruous that the defendant should character-ize this crossing as "dangerous" in its closing argument but on appeal argue that the jury should not consider whether additional crossing protection should have been provided.

Thus, there was sufficient evidence to support the instructions to the jury and the issue was properly submitted to them. Defendant's second issue is without merit.

Next, the defendant alleges that the jury verdict in favor of plaintiffs was inconsistent as a matter of law with the verdict returned in favor of the train engineer.

This issue was raised in defendant's motion for a judgment notwithstanding the verdict or for a new trial. The trial judge held:

"2. Defendant claims plaintiff Harvey Decker was guilty of contributory negligence as a matter of law. This contention springs from the jury's verdict of no cause of action as to the defendant railroad engineer. However, defendant railroad's conclusion does not necessarily follow from the jury's verdict. There are other interpretations of the no cause verdict than the one favored by defendant railroad.

"Furthermore, such verdict does not dictate that plaintiff Harvey Decker was contributorily negligent, and that such negligence was a proximate cause of the accident. This view is suggested in *Cookson v Humphrey,* 355 Mich 296 [93 NW2d 903 (1959)].

" 'Jury verdicts which have a logical explanation will not be found inconsistent.' *National Pharmaceutical Services, Inc v Harrison Community Hospital,* 67 Mich App 286 [241 NW2d 76 (1976)]. The jury's verdict in this case has the logical explanation that the engineer was not negligent so as to be a proximate cause of the accident, whereas the defendant railroad was so negligent."

Defendant is bootstrapping its position in maintaining that because the jury returned a verdict in favor of the train engineer, the jury must have found that the speed of the train was reasonable, that the headlight was properly working, and that the whistle was properly sounding. Therefore, as a matter of law, plaintiff was contributorily negligent in failing to heed the warnings and that such negligence was a proximate cause of the accident. However, this does not necessarily follow. The

verdict in favor of the train engineer does not mean that the jury found that the train's whistle was blowing or that the headlight was shining. It is also possible that the jury may have concluded that the engineer was negligent, but that his negligence was not a proximate cause of the accident. See *Johnson v Grand Trunk W R Co*, 58 Mich App 708; 228 NW2d 795 (1975).

Defendant's common-law duty of care extended beyond the actions taken by the engineer. The jury's verdict as to the engineer does not require that the plaintiff must have been contributorily negligent and that such negligence must have been a proximate cause of the accident. Defendant's issue is without merit.

The last issue of defendant claims that the damage awards to Mr. Decker of $800,000 and Mrs. Decker of $100,000 are excessive.

Defendant maintains that Mr. Decker's preexisting conditions of heart disease, ulcers, weight problems and degenerative disc disease would have eventually caused the pain that resulted from the car-train accident. Thus, the myelogram and the two cervical laminectomies would have had to have been performed eventually and the effect of the accident was to accelerate the symptoms which necessitated the operations. Plaintiffs claim that the jury verdict is within the range of evidence and should be upheld.

This Court in the recent case of *Pippen v Denison Division of Abex Corp*, 66 Mich App 664, 674–676; 239 NW2d 704 (1976), *lv den* 399 Mich 823 (1977), set out the principles by which this Court will review jury awards for excessiveness. In *Pippen, supra,* the plaintiff, aged 67, lost an arm in a power press. He sued for breach of warranty and negligence. His wife, also 67, sued for loss of

consortium. The jury returned a verdict of $1,250,-000 for the husband and $500,000 for the wife. The trial court ordered *remittitur.* This Court reversed and held:

"Clearly, the trial judge is not empowered to go through *de novo* review of the verdict returned by the jury. The *remittitur* power should be exercised with restraint. The courts are even more reluctant to allow jury verdicts in personal injury cases to be disturbed. The rationale for that deference to the jury is found in the early case of *Watrous v Conor,* 266 Mich 397; 254 NW 143 (1934):

" 'There is and can be no absolute standard by which we can measure the amount of damages in personal injury cases. Individual opinions may differ as to the correctness of awards, even those made by trial judges. It has yet to be determined whether the judgment of a one-man jury is sounder than that of 12. * * * Adopting defendant's contention that, at best, the showing here is only one of pain and suffering, plus expenses for medical services and hospitalization attention, we still prefer our rule stated in the case of *Weil v Longyear,* 263 Mich 22 [248 NW 536 (1933)], that the amount allowed for pain and suffering must rest in the sound judgment of the trier of the facts. Assuming even that our verdict might be in a different amount, we are loath to disturb verdicts for personal injuries on the ground that the amount is excessive.' 266 Mich at 401.

See also, *O'Grady v Rydman,* 347 Mich 606; 81 NW2d 383 (1957), *Cleven v Griffin,* 298 Mich 139; 298 NW2d [sic] 482 (1941), *Morgan v Engles,* 13 Mich App 656; 164 NW2d 702 (1968), *shirley [sic] v The Drackett Products Co,* 26 Mich App 644; 182 NW2d 726 (1970), and *Dillard v Braunstein,* 32 Mich App 216; 188 NW2d 203 (1971), for similar reasoning.

"With the extra regard for the jury assessment in personal injury cases, the 'shock the conscience' test becomes:

" ' "As long as the amount awarded is within the range of the evidence, and within the limits of what reasonable minds might deem just compensation for

such imponderable items as personal injuries sustained and pain and suffering, the verdict rendered should not be set aside." ' *Stevens v Edward C Levy Co,* 376 Mich 1, 5; 135 NW2d 414 (1965).

\* \* \*

"The original jury verdict of $1,750,000 for plaintiffs was supported by the record, and does not 'shock' our 'judicial conscience'. The plaintiff John Pippen testified as to intense pain and suffering from his injuries, and Evelyn Pippen told of the problems that had resulted to their relationship as husband and wife." *Pippen, supra,* at 674–676.

See also, *Kulhanjian v The Detroit Edison Co,* 73 Mich App 347; 251 NW2d 580 (1977), wherein this Court upheld a jury verdict of $1,000,000 as not being excessive. The plaintiff had backed into a hot wire and was seriously injured.

There appears to be no argument with the testimony of Dr. Henderson, an economics professor at Michigan State University, that Mr. Decker's earning capacity from the date of the accident until the end of his normal life expectancy is $306,823. Mr. Decker's medical bills were around $20,000 and, therefore, approximately $473,000 was awarded for pain and suffering.

The plaintiff was 38 years of age at the time of the accident. After spending four to five days in the hospital, plaintiff was released. Plaintiff complained of excruciating headaches, dizziness and pains in his arms. He visited his family doctor, whose diagnosis was that plaintiff suffered post concussion syndrome, laceration of the right ear, abrasions and contusions of both knees, hematoma of the left anterior tibial area, hematoma of the right shoulder area, hematoma of the left upper arm and general traumatic right-sided fibro myositis.

Plaintiff was sent to a neurosurgeon whose diag-

nosis was post cerebral concussion syndrome, which was the result of the injury to the head and the jarring of the brain, post traumatic cervical and epidoural strain, and lypertrophic osteoarthritis of the spine. Plaintiff was then placed in the hospital for three weeks where a myelogram was performed and he was put in traction. After his release from the hospital, plaintiff had to be in traction at home for two out of three waking hours. Plaintiff's pain continued and another doctor found a pinching of the nerve between the sixth and seventh neck bone. In order to correct this, a cervical laminectomy was performed. This operation is a dangerous one and can result in paralysis or death. The operation seemed to be a success and plaintiff was able to work again. However, the pain returned to plaintiff's left shoulder and arm and a second cervical laminectomy was performed.

Plaintiff continued to have pains in his arm and shoulder, however, the doctor refused to do a third laminectomy because the risk was too great. Plaintiff has continued to have headaches and pains in his arms and shoulder since the accident and may continue to have these problems in the future.

In addition, Mr. Decker no longer enjoys the outdoor recreational activities that he had in the past, including hunting and fishing. In the past plaintiff worked with the Boys Scouts, but now is unable to do so because of his nerves. His wife testified as to his change of moods toward her and the children. Also, their sexual relationship is no longer the same.

We agree with the trial judge that a verdict of $800,000 for Mr. Decker and $100,000 for Mrs. Decker was properly returned by the jury and within the range of evidence.

Affirmed, costs to plaintiffs.