Larry T. WILSON, Plaintiff-Appellee,
and Cross-Appellant,

v.

Thomas L. BEEBE, Defendant-Appellant, and Cross-Appellee.

Nos. 82–1362, 82–1385.

United States Court of Appeals,
Sixth Circuit.

Argued March 30, 1983.

Decided Aug. 29, 1984.

Merritt, Circuit Judge, filed opinion concurring in part and dissenting in part.

See also, 6th Cir., 612 F.2d 275.

Frank J. Kelley, Atty. Gen. of Michigan, Louis J. Caruso, Sol. Gen., Thomas A. Kulick, Thomas L. Casey (Lead Counsel) (argued), Asst. Attys. Gen., Lansing, Mich., for defendant-appellant, and cross-appellee.

David R. Skinner (Lead Counsel) (argued), Richard B. Gustafson, Bay City, Mich., for plaintiff-appellee, and cross-appellant.

Before KEITH, MERRITT and JONES, Circuit Judges.

KEITH, Circuit Judge.

Plaintiff, Larry Wilson, and defendant, Thomas Beebe appeal the judgment of the district court in this action which was brought pursuant to 42 U.S.C. § 1983 and a pendent state claim of negligence. The district court, based upon the findings and recommendations of a magistrate, dismissed Wilson's section 1983 action, but imposed liability upon defendant Beebe based upon the pendent state claim of negligence. Although the magistrate's negligence finding was upheld, his damage award was reduced by the district court. Wilson now appeals the dismissal of his section 1983 action and the reduction of damages. Beebe appeals the finding of negligence based upon the pendent state claim. For the reasons set forth below the decision of the district court is affirmed in part and reversed and remanded in part.

## I.

This case has its genesis in a series of events that occurred on February 23, 1975. On that date, a breaking and entering occurred at the home of Frank Gronowski, who resided near Tawas, Michigan. Defendant, Thomas Beebe, a Michigan State Trooper, responded to a call to assist in the apprehension of the suspect. Beebe was given a description of a person seen in or near the Gronowski residence around the time of the burglary. He was also informed that guns and ammunition were taken from the scene of the crime.

Trooper Beebe, who was alone in his patrol car, followed another trooper along Monument Road in Tawas, Michigan. Shortly thereafter, he noticed a person fit-

ting the suspect's description walking around the roadway. He immediately turned his patrol car around to pursue the suspect, but the person fled into a wooded area. Beebe then established a position on Driveway Road, which is a short, unpaved road located in the Huron National Forest.

Between 7:30 p.m. and 8:00 p.m., while still positioned on Driveway Road, Beebe spotted a person on the road approximately fifty to seventy-five yards away. He watched the figure, which he believed to be a man, approach the patrol car. Beebe gave an order to halt when the person was approximately fifty feet from the car. He focused the spotlight of the car on the person's face, and recognized that the person fit the description of the burglary suspect. Beebe ordered the person to stop and place his hands on his head. The suspect complied with Beebe's order, and Beebe attempted to radio other officers for assistance with a walkie-talkie. After radio contact was unsuccessful, Beebe ordered the suspect to approach the patrol car. As the suspect approached, Beebe again unsuccessfully attempted radio contact. When the suspect reached the car, Beebe ordered him to extend his hands on the hood of the car.

Beebe placed the shotgun and walkie-talkie he was carrying into the patrol car and removed a .38 caliber service revolver from his parka. He walked to the front of the patrol car and ordered the suspect to "spread eagle" on the roof of the vehicle. Beebe pulled back the hammer of the .38 and told the suspect the gun was cocked. He also asked the suspect if he heard the clicking of the hammer. After the suspect acknowledged that the gun was cocked, Beebe ordered him to lie down on the ground in front of the car in the beam of the spotlight. Beebe conducted a frisk and no weapons were found.

An attempt was made to handcuff the suspect, but the bulk of his coat prevented the left bracelet from locking. Beebe then stood behind the suspect and ordered him to stand. While attempting to handcuff the suspect a second time, Beebe's revolver accidentally discharged and struck the suspect in the back. Beebe called for assistance and another trooper responded. The suspect was identified as the plaintiff, Larry Wilson, who sustained injuries to the spine, intestines and gall bladder. As a result of these injuries Wilson has experienced atrophy of his calf muscles, severely decreased sensation of his genitals bordering on impotence, reduced control of his sphincter muscle, partial loss of sensation and mobility in his lower extremities, and urinary problems.

Wilson brought an action in federal district court against Beebe, his supervisors, the Michigan State Police Department, and the State of Michigan as a result of his injuries. The action was brought pursuant to 42 U.S.C. § 1983 for an alleged violation of Wilson's civil rights pursuant to Michigan common law. Wilson's action was heard before a United States Magistrate who entered findings of fact and conclusions of law. The magistrate determined that Wilson's action could not be maintained under section 1983.[1] However, he further ruled that Wilson was entitled to damages pursuant to Michigan negligence law. Consequently, the magistrate recommended that judgment be entered against the defendants in the amount of $3,513,970.

Timely objections to the magistrate's report were filed with the district court. The court subsequently entered a memorandum opinion and order which affirmed the dismissal of plaintiff's section 1983 action. The magistrate's recommended damage award was reduced by the district court to $2,569,638.

## II.

Defendant Beebe argues that the district court erred in not finding him immune from tort liability pursuant to Mich.Stat.

---

**1.** The magistrate found that *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) precluded any recovery by Wilson under 42 U.S.C. § 1983. This decision was affirmed by the district court.

Ann. § 3.996(107) (Callaghan 1977) [M.C.L.A. § 691.1407] which provides:

> Governmental function; immunity from tort liability; immunity of state. Sec. 7. Except as in this act, otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the [government] agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretobefore, which immunity is affirmed.

Beebe asserts that this statute entitles him to immunity from tort liability. This argument is unpersuasive. The law in Michigan regarding governmental immunity is unsettled. The Michigan Court of Appeals is split on the analysis to be used in determining whether the governmental immunity statute, Mich.Stat.Ann. § 3.996(107) [M.C.L.A. § 691.1407], provides immunity to state employees from personal tort liability. On some occasions the Michigan Court of Appeals has held that a state employee is entitled to immunity whenever he is acting within the scope of his employment. *See, e.g., Square D Environmental Corp. v. Aero Mechanical, Inc., et al.,* 119 Mich. App. 740, 326 N.W.2d 629 (1982); *Fuhrmann v. Hattaway,* 109 Mich.App. 429, 311 N.W.2d 379 (1981); *Lewis v. Beecher School System,* 118 Mich.App. 105, 324 N.W.2d 779 (1982); *Gaston v. Becker,* 111 Mich.App. 218, 314 N.W.2d 728 (1981). This interpretation of Mich.Stat.Ann. § 3.996(107) [M.C.L.A. § 691.1407] is based upon the Michigan Supreme Court decision, *Lockaby v. Wayne County,* 406 Mich. 65, 276 N.W.2d 1 (1979). The Michigan Court of Appeals has interpreted the plurality opinion of *Lockaby* as representing the proposition that Michigan has abolished common law governmental or sovereign immunity.

Other panels of the Michigan Court of Appeals have relied upon common law principles of sovereign immunity when determining whether a state employee is entitled to immunity pursuant to Mich.Stat.Ann. § 3.996(107) [M.C.L.A. § 691.1407]. Under the common law approach the courts employ a discretionary-ministerial test. If it is found that the alleged negligent act by a state employee is discretionary, a grant of immunity is given to the employee. A negligently performed ministerial task will not shield the state employee from personal tort liability, although the state agency which employs him will be given immunity. *See, e.g., Vargo v. Svitchan,* 100 Mich.App. 809, 301 N.W.2d 1 (1980); *Cook v. Bennett,* 94 Mich.App. 93, 288 N.W.2d 609 (1979). Discretionary tasks are those of a legislative, executive or judicial nature. Acts of a ministerial nature are those where the public employee has little decision making power during the course of performance and the conduct is delineated. *Cook,* 94 Mich. App. at 100, 288 N.W.2d at 612.

The facts of the instant case require a finding that the district court was correct in deciding that Beebe was not entitled to immunity despite these two markedly different interpretations of immunity by Michigan courts. The Michigan Supreme Court has never stated that the discretionary-ministerial test has been abolished in determining whether a state employee is entitled to immunity. Nor are we persuaded by Beebe's argument that the Michigan Supreme Court in *Lockaby* abrogated this approach by implication. As a panel of the Michigan Court of Appeals recently noted, "[e]stablished rules of law are not generally abandoned merely by implication." *Layton v. Quinn,* 120 Mich.App. 708, 120, 328 N.W.2d 95, 102 (1982). Consequently, there was no authority which precluded the district court from finding that Beebe was engaging in a ministerial act to which immunity would not attach.[2]

**2.** We also find Beebe's contention that *Fiser v. City of Ann Arbor,* 417 Mich. 461, 339 N.W.2d 413 (1983) compels a finding that he was engaged in discretionary conduct and thus was entitled to immunity is without merit. In *Fiser,* the Michigan Supreme Court held that one of the police officers present in a police vehicle involved in an accident was not liable because

## III.

Beebe also argues that the district court erred by admitting into evidence a memorandum written by Captain MacGregor, who was Trooper Beebe's district commander. This memorandum detailed the events which led to the shooting of Larry Wilson. It also contained a statement by Captain MacGregor that Beebe, by attempting to handcuff Wilson while holding a cocked weapon, acted contrary to department training in weapons use and handling. Beebe asserts that this memorandum should not have been admitted into evidence because it violated Federal Rule of Evidence 407, which excludes the admission of subsequent remedial measures to prove negligence. It is also claimed that admission of the memorandum violated Federal Rule of Evidence 403, which excludes evidence whose prejudice outweighs its probative value. We disagree.

As the magistrate noted when he ruled the memorandum admissible, Federal Rule of Evidence 803(8)(A) or 803(8)(C) provides for the admissibility of public records and reports in civil actions against the government where the public record or report is made pursuant to authority granted by law unless the circumstances indicate a lack of trustworthiness. Federal Rule of Evidence 803(8)(A) allows the public records and reports of the activities of the office involved to be admitted.

This Circuit has approved the admission into evidence of public records or reports pursuant to Federal Rule of Evidence 803(8)(C) on several occasions. *See, e.g., United States v. School District of Ferndale, Michigan,* 577 F.2d 1339 (6th Cir. 1978); *Baker v. Elcona Homes Corporation,* 588 F.2d 551 (6th Cir.1978). We have stated that when admitting a public record or report:

> [R]ule 803(C) [should be applied] in a common sense manner, subject to the district court's sound exercise of discretion in determining whether the hearsay document offered in evidence has sufficient independent indicia or reliability to justify its admission. *Miller v. Caterpillar Tractor Co.,* 697 F.2d 141, 144 (6th Cir.1983) (quoting *City of New York v. Pullman, Inc.,* 662 F.2d 910, 914 (2d Cir.1981)).

In *Baker v. Elcona Homes Corp., supra,* we listed four factors to be considered when determining the admissibility of evidence pursuant to Rule 803. Those factors are: 1) the timeliness of the investigation; 2) the skill or experience of the official; 3) whether a hearing was conducted; and 4) possible motivational problems. *Id.* at 558.

The above considerations make it clear that it was not error to admit the MacGregor memorandum. The memorandum was written by Captain MacGregor within one week of the incident. Second, it was written for interdepartmental use, which also indicates that it is accurate. Testimony indicated that Captain MacGregor had previously been a firearms instructor in the

---

he did not participate in the operation of the vehicle. The court specifically noted that it was unnecessary to make any determination whether the decision by police to pursue a traffic violator was ministerial or discretionary. Thus, Beebe's reliance upon *Fiser* is clearly misplaced, since it is inapplicable to the immunity issue of this case.

Judge Merritt, in his dissent from our finding that Beebe was negligent, posits that Wilson never alleged a common law negligence claim against Beebe. We must respectfully disagree with Judge Merritt. Count One of Wilson's complaint contains allegations which can be construed as a common law negligence claim. Paragraph forty one of Wilson's complaint specifically alleges that Beebe "failed, refused and neglected to exercise the necessary care re-

quired of him...." Paragraph forty four concludes Count One with the allegation Beebe's acts were the proximate cause of Wilson's injuries.

Moreover, Count Four of Wilson's complaint alleged a claim of negligence against the Michigan State Police based upon the doctrine of respondeat superior. Respondeat superior imposes liability upon an employer based upon the negligent act(s) of it's employee(s). All these allegations amply support the district court's finding that Wilson did allege a common law negligence claim against Beebe. This is particularly true in light of Federal Rule of Civil Procedure (8)(f) which provides that "all pleadings shall be construed so as to do substantial justice."

department and would be familiar with the department's firearms training procedure and policy. Furthermore, no evidence was presented to show there were any motives involved in the memorandum's preparation that would detract from its trustworthiness. Nor was any evidence presented which impugned the memorandum's trustworthiness. Therefore, the magistrate was correct in admitting the MacGregor memorandum pursuant to Federal Rule of Evidence 803(8)(C).

## IV.

▆ Larry Wilson contends that the district court erred by reducing the magistrate's recommended damage awards for disability and disfigurement, past pain and suffering, and past medical expenses. The magistrate recommended that Wilson be awarded $1,500,000 for disability and disfigurement, $820,000 for past pain and suffering, and $50,000 for past medical expenses. The district court subsequently reduced the disability and disfigurement award to $500,000, the past pain and suffering award to $492,000, and past medical expenses to $30,000.

The district court reduced these awards because it found that they were not supported by the evidence. Specifically, the district court found the $1,500,000 award for disability and disfigurement to be excessive. However, it was not stated why the award was excessive. The court concluded that an award of $500,000, properly invested, could provide Wilson with reasonable compensation for his disability and disfigurement.

Similarly, the district court also found the past pain and suffering award to be excessive. The magistrate's original award of $125,000 per year for past pain and suffering was reduced to $75,000 per year because the district court felt this smaller amount was "more reasonable and justifiable."

Finally, the district court reduced the past medical expenses award because the magistrate did not explain the computations for the $50,000 figure. Two months

before trial, Wilson claimed $28,346 for past medical expenses. Consequently, the district court added an amount just under $2,000 to the last amount claimed by Wilson for a revised past medical expenses award of $30,000.

Michigan law provides that the standard for review of a trial court's damage award is whether there has been an abuse of discretion. *Burnett v. Mackworth & Rees, Inc.*, 109 Mich.App. 547, 311 N.W.2d 417 (1981); *Pippen v. Denison, Division of Abex Corp.*, 66 Mich.App. 644, 239 N.W.2d 704 (1976), *lv. den.*, 399 Mich. 823 (1977). A damage award will be set aside as excessive if it is based on prejudice, caprice, passion, partiality, sympathy or similar reasons, or if it is so great as to be shocking to the conscience. *Tiffany v. The Christman Co.*, 93 Mich.App. 267, 287 N.W.2d 199 (1979). The Michigan Court of Appeals noted in Pippen:

> As long as the amount awarded is within the range of the evidence, and within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries sustained and pain and suffering, the verdict rendered should not be set aside. *Pippen, supra* [66 Mich.App.] at 675 [239 N.W.2d 704] (citing *Stevens v. Edward C. Levy Co.*, 376 Mich. 1, 5, 135 N.W.2d 414 (1965)).

Wilson relies upon other cases where large jury verdicts have been upheld as not being excessive in support of his position that the district court erred in this case by reducing the magistrate's damage award. We have reviewed these cases and found they do not support Wilson's position.

In many of the cases relied upon by Wilson, the plaintiff did receive a substantial verdict that was found not to be excessive. However, in none of these cases did a plaintiff receive an amount that came close to the amounts awarded to Wilson by the magistrate for disability and disfigurement and pain and suffering. For instance, in *Decker v. Norfolk and Western Railway Co.*, 81 Mich.App. 647, 265 N.W.2d 785 (1978), the plaintiff received a

verdict of $800,000 for injuries he suffered after being struck by the defendant's train as a result of the negligent maintenance of a railroad crossing. Approximately $470,-000 of that verdict was for pain and suffering. Other cases relied upon by Wilson made similar awards for pain and suffering.

Of course every award for injuries must be determined by its own facts. Therefore, similar cases should not be relied upon by a fact-finder when determining the amount of a plaintiff's damage award. However, analogous cases may be reviewed at the post-trial or appellate stage to determine whether a damage award is within a given range. *Precopio v. City of Detroit Department of Transportation*, 415 Mich. 457, 330 N.W.2d 802 (1982). After reviewing analogous Michigan cases regarding pain and suffering and disability and disfigurement awards, we find that the district court was correct in reducing the damages in these areas. The magistrate's recommended awards were clearly outside the range of awards normally given to successful plaintiffs and could have easily shocked the conscience of the court. Therefore, the reduction of damages by the district court was proper.

However, there is one important omission that both the magistrate and the district court apparently made regarding damages which must be addressed. A review of the magistrate's and district court's computations discloses that neither included the statutorily required interest that is to be added to the judgment. MICH.COMP. LAWS ANN. § 600.6013 provides in pertinent part:

**Same; interest on judgment, rate, settlement**

(1) Interest shall be allowed on a money judgment recovered in a civil action, as provided in this section.

(2) For complaints filed before June 1, 1980, in an action involving other than a written instrument having a rate of interest exceeding 6% per year, the interest on the judgment shall be calculated from the date of filing the complaint to June 1, 1980 *at the rate of 6% per year and on and after June 1, 1980 to the date of satisfaction of the judgment at the rate of 12% per year compounded annually* (emphasis added).

■ This Michigan statute expressly provides for the addition of interest to any money judgment recovered in a civil action. Pursuant to § 600.6013(2), Wilson is entitled to interest on his judgment at the rate of six percent from January 17, 1977, the date he filed his complaint. Furthermore, after June 1, 1980, Wilson is entitled to interest at the rate of twelve percent per year compounded annually until the judgment is satisfied.

None of the computations made by the magistrate and district court include this statutorily required interest. Accordingly, Wilson's damage award is remanded to the district court for the inclusion of interest on his judgment.

### V.

Wilson also argues that the district court erred in dismissing his section 1983 action pursuant to *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). He contends that the district court has given *Parratt* "an overbroad interpretation." Wilson asserts that *Parratt* applies only to negligent deprivations of property which involve "a random and unauthorized act by a state employee," 451 U.S. at 541, 101 S.Ct. at 1916, and that *Parratt* has no application where a negligent deprivation of a life or liberty interest has been alleged. We agree.

In *Parratt v. Taylor, supra*, a prison inmate brought a § 1983 action against prison officials for the negligent loss of his hobby kit. The inmate alleged that the negligent loss of his hobby kit constituted a deprivation of property without due process of law in violation of the Fourteenth Amendment. His claim was upheld in the district court and the Court of Appeals. However, the Supreme Court reversed the lower court's decision and dismissed the inmate's claim. The Court found that there could be no due process violation

since the deprivation of property did not occur as the result of some established state procedure, but, instead, was the result of the unauthorized failure of state agents to follow established procedures. It was further decided that there could be no due process violation because the state provided a torts claims procedure which afforded a remedy to persons who have suffered a tortious loss at the hands of the state. Although the inmate did not follow this procedure, it could have fully compensated him for his loss and satisfied the elements of due process.

Our Circuit has interpreted *Parratt v. Taylor, supra,* on several occasions. *See, e.g., Vicory v. Walton,* 721 F.2d 1062 (6th Cir.1983); *Loudermill v. Cleveland Board of Education,* 721 F.2d 550 (6th Cir.1983); *Brandon v. Allen,* 719 F.2d 151 (6th Cir. 1983). None of these cases, however, addressed the application of *Parratt* to a situation where a negligent deprivation of a life or liberty interest was alleged. In *Vicory* and *Loudermill,* unconstitutional deprivations of a property interest were alleged. We held that "in section 1983 damage suits for deprivation of property without procedural due process, the plaintiff has the burden of proving the inadequacy of state processes including state damage remedies to redress the claimed wrong." *Vicory,* 721 F.2d at 1063.

Unlike *Vicory* and *Loudermill, Brandon v. Allen, supra,* did not involve an alleged deprivation of a property right. Instead, the plaintiff in *Brandon* alleged that his constitutional rights were violated as a consequence of being the victim of an assault and battery committed by a police officer. It was recognized in *Brandon* that the plaintiff had a substantive due process right to enjoy the security of his life and limb. The injury to this right was recognized to be compensable, along with the injuries to the plaintiff's physical and economic well being.

 This substantive due process right to enjoy the security of life and limb has been extended to include the right to be free from the use of excessive force by law enforcement officers. *See, e.g., Black v. Stephens,* 662 F.2d 181 (3rd Cir.1981); *Roberts v. Marino,* 656 F.2d 1112 (5th Cir. 1981); *Garrick v. City and County of Denver,* 652 F.2d 969 (10th Cir.1981); *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir. 1981); *Landrigan v. City of Warwick,* 628 F.2d 736 (1st Cir.1980); *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir.1970); *Schiller v. Strangis,* 540 F.Supp. 605 (D.Mass.1982); *Lucas v. Kale,* 364 F.Supp. 1345 (W.D.Va. 1973). The protection of fundamental liberties by the due process clause extends to protection from an official's abusive exercise of his powers to inflict grossly undue harm. *Black v. Stephens,* 662 F.2d at 188. The test under the due process clause is whether the police officer's conduct "shocks the conscience." *Id.* (*quoting Rhodes v. Robinson,* 612 F.2d 766, 772 (3rd Cir.1979)). Consequently, injuries arbitrarily inflicted by law enforcement officers are constitutionally cognizable and remediable.

Despite this well established principle of law, the district court found that Larry Wilson did not state a valid cause of action under 42 U.S.C. section 1983. The district court, relying on *Parratt v. Taylor, supra,* and its application by other circuits, reasoned that there was no deprivation without due process of law. Reliance was particularly placed on *Mills v. Smith,* 656 F.2d 337 (8th Cir.1981), because the facts were very similar to those in the instant case. In *Mills,* an inmate who had attempted to escape from prison was accidentally shot by a law enforcement officer after being apprehended. The inmate subsequently brought a section 1983 action against the officer and state officials as a result of the shooting. The Eighth Circuit, in *Mills,* dismissed the lawsuit and held that no federally protected right of the inmate had been violated. It was noted that "a negligent action resulting in personal injury does not become a constitutional violation merely because the tortfeasor is a state or local police officer." *Mills, supra,* at 340 n. 2 (citing *Parratt v. Taylor, supra* ).

The Court of Appeals are divided on whether *Parratt v. Taylor* applies to depri-

vations of a liberty interest. Some circuits have held that *Parratt* applies to deprivations of life or liberty interests. *See, e.g., Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir.1981), *aff'd on other grounds, sub. nom, Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983) (under *Parratt,* plaintiff must show that post-deprivation tort remedies under Arizona law were deficient in order to state a valid section 1983 claim for intentional assault and battery). Other circuits have declined to apply *Parratt* to deprivations of life or liberty interests. *See, e.g., Palmer v. Hudson,* 697 F.2d 1220 (4th Cir.), *cert. granted,* — U.S. —, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983) (*Parratt* applies to intentional deprivations of property, but not to violation of privacy rights); *Vail v. Board of Education of Paris Union,* 706 F.2d 1435 (7th Cir.1983).

■ The better approach is to decline to apply *Parratt* to deprivations of a life or liberty interest. *Parratt* applies only to Section 1983 suits alleging the deprivation of a property interest caused by "a random and unauthorized act by a state employee." 451 U.S. at 541, 101 S.Ct. at 1916. Justice Blackmun, in his *Parratt* concurrence, specifically stated, "This suit concerns the deprivation only of property and was brought only against supervisory personnel, whose simple 'negligence' was assumed but, on this record, not actually proved. I do not read the Court's opinion as applicable to a case concerning deprivation of life or liberty." 451 U.S. at 545, 101 S.Ct. at 1918. Because of the importance of protecting liberty interests such as those involved in the case at bar, we decline to extend the narrow language of *Parratt* beyond cases alleging negligent deprivations of property interests. Our decision in *Brandon v. Allen, supra,* is consistent with this position. In *Brandon,* we recognized the substantive due process right to enjoy the security of life and limb. It was further decided that this right could be the subject of section 1983 liability along with compensation for damages to the individual's physical and economic injuries suffered as a result of misuse or abuse of the state's power. Section 1983's purpose is to ensure the vindication of constitutional rights. State tort remedies do not serve that function. Consequently, we agree with Wilson's contention that the district court has given *Parratt* an overbroad interpretation.

In most cases where Section 1983 liability has been found as a consequence of the use of excessive force by law enforcement officials, the offending conduct was intentional. However, this does not foreclose the possibility that the negligent use of excessive force may also provide the basis for Section 1983 liability. The Supreme Court stated in *Parratt* that "nothing in the language of section 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights." 451 U.S. at 534, 101 S.Ct. at 1912.

■ Officer Beebe's negligent act in the instant case is the type which poses the possibility of section 1983 liability. Holding a cocked pistol on a suspect evinces reckless disregard for the rights of the suspect, which would allow a jury to find a constitutional violation and section 1983 liability. Such an act greatly increases the likelihood that the law enforcement officer will serve as the suspect's judge, jury, and executioner before his guilt is determined by a court of law. Although Beebe did not intend to injure Larry Wilson, holding a cocked pistol on him so increased the likelihood that injury would occur that Wilson's due process right to be free from the use of excessive police force could have been violated.

■ Our decision regarding this matter does not mean that each and every negligent act committed under color of law is sufficient to establish a constitutional violation. As *Parratt v. Taylor* and other cases [3] have shown, not every tort committed under color of law is a constitutional question. However, where the tort committed violates a substantive due process right and shocks the conscience of a court, section 1983 liability may also be found in

---

**3.** *See, e.g., Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Ingraham v.* *Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

addition to liability for damages to the plaintiff's physical and economic interests.

Accordingly, the decision of the district court dismissing Larry Wilson's Section 1983 claim is reversed and remanded. The decision finding Thomas Beebe negligent, pursuant to Michigan law is affirmed, and remanded for the addition of interest pursuant to MICH.COMP.LAWS ANN. § 600.6013.

MERRITT, Circuit Judge, dissenting in part.

In this unfortunate case a Michigan state trooper negligently shot and almost killed a person he had just arrested. The Court's decision today reverses the District Court's approval of a magistrate's determination that the plaintiff cannot maintain a claim for this conduct under 42 U.S.C. § 1983, but upholds the District Court's decision that plaintiff had pled and proved a pendent state cause of action which entitled him to relief in the amount of $2,569,638.

First, I agree with the conclusion of our Court that notwithstanding *Parratt v. Taylor*, 451 U.S. 527 (1981), a negligent deprivation of a liberty interest may violate the fourteenth amendment due process clause and thus may form the basis for a claim under section 1983. We have recently interpreted *Parratt* to impose liability based on a negligent deprivation of a liberty interest. *Brandon v. Allen*, 719 F.2d 151 (6th Cir.1983), *cert. granted* 52 U.S.L.W. 3839 (U.S. May 21, 1984).

In *Vicory v. Walton*, 721 F.2d 1062 (6th Cir.1983), we held that in section 1983 damage suits claiming the deprivation of a property interest without procedural due process, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. *See id.* at 1065. It is important to note that we limited our decision in *Vicory* to constitutional torts implicating *property* interests. *See also Parratt*, 451 U.S. at 545 (Blackmun, J., and White, J., concurring) (limiting *Parratt* principle to property interests). I would continue to limit *Parratt* to claims arising out of property deprivation without procedural due process because, as Justice Blackmun stated in his concurrence in that

case, "I continue to believe that there are certain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process." *Id.* at 545.

The Ku Klux Klan Act of 1871, the original legislative source of § 1983, was enacted as a weapon to combat deprivations committed by the Ku Klux Klan and other groups against Blacks in the Reconstruction-era South. The drafters were concerned not about property interests but about the liberty of recently-freed slaves. Acts of violence and lawlessness—the deprivations of liberty—which were at the heart of the statute deserve more careful scrutiny than the property deprivations which the statute has since been held to encompass, as Justices White and Blackmun suggest.

I disagree, however, with the Court's conclusion that the District Court's finding of negligence liability can properly be based upon a pendent state claim, for I can find no such claim in any of the plaintiff's pleadings. Even the District Court, in adopting the Magistrate's report and recommendations, pointed out that the Magistrate's determination on the pendent state claim was in error:

> The Magistrate, in the "summation" portion of his opinion, stated that "defendant Beebe is held liable to plaintiff Wilson under a theory of common law negligence as alleged in Count II of the complaint." (Report at 7). For two reasons this conclusion is erroneous: First, Count II of plaintiff's complaint did not implicate defendant Beebe and only alleged negligent supervision and entrustment on the part of various supervisors of the defendant; and second, even if Count II did state a claim against defendant Beebe, that count was dismissed prior to trial by this Court's opinion of August 9, 1977, as affirmed by the Sixth Circuit in *Wilson v. Beebe*, 612 F.2d 275 (CA 6, 1980).

Memorandum Opinion and Order at 6, Joint App. at 116. The District Court goes on to suggest that since defendant "defended against this [pendent state claim found by

352

the Magistrate] for relief" throughout the lawsuit, and since the Federal Rules of Civil Procedure set forth a philosophy of "notice pleading," the Magistrate's "oversight" should be disregarded. I do not agree. However sympathetic plaintiff's may appear, we cannot afford to undermine the rule that requires a cause of action to be pled and explicitly recognized and consciously litigated first before the court bases a verdict and judgment on it—here a verdict of $2.5 million.

Finally, in erroneously dismissing plaintiff's section 1983 claim, the District Court also erred in not considering any defense of qualified immunity defendant might have under section 1983 as interpreted by *Gomez v. Toledo*, 446 U.S. 635 (1980) and *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). I would therefore reverse the state claim and remand this case to the District Court for reconsideration of plaintiff's section 1983 claim for a deprivation of liberty and for consideration of defendant's qualified immunity defense.